WICKER, Judge.
This appeal arises from a suit filed on behalf of plaintiff/appellant, Marjorie Mon-tegut Sutton (Sutton) to annul a probated testament on the ground that the testator, Walton Montegut (Montegut) was of unsound mind and lacked the physical and mental capacity to make a will. The trial judge granted the motion for involuntary dismissal urged by the defendants/legatees and executor after Sutton rested her case. Sutton now appeals the dismissal. We affirm the judgment of dismissal. An answer to the appeal was filed on behalf of the defendants/appellees seeking damages for an allegedly frivolous appeal which we deny.
Montegut, the decedent, executed a statutory will in accordance with L.S.A.-R.S. 9:2443[1] on September 5, 1979. He was 87 at the time he executed the will which consisted of bequests to his only living heirs, his nieces and nephews. Sutton is one of the nieces.
Montegut was hospitalized on three occasions for the treatment of depression and senile dementia as well as other medical problems. He was hospitalized twice at Tulane Medical Center from August 1977 through October 1977 and from November 1977 through May 1978. On both admis *894 sions his primary treating psychiatrist was Dr. David Shraberg (Shraberg).
Montegut’s final hospitalization for treatment of medical problems as well as his psychiatric problems occurred from May 1978 through April 1979 at Coliseum Medical Center. On that occasion, Dr. Joseph Roniger (Roniger) was his treating psychiatrist. Upon discharge Roniger continued to monitor Montegut on an outpatient basis until 1984. Montegut died December 28, 1984 at the age of 92.
On September 5, 1979 Montegut executed a statutory will. Sutton filed suit to annul that will on the basis that Montegut lacked the competency to execute the instrument. At the close of her case-in-chief, the defendants/appellees moved for a judgment of dismissal. They argued that Sutton had not met her burden of proof of incapacity “beyond a reasonable doubt”. The trial judge granted a judgment of dismissal without indicating the standard for the burden of proof he adopted in making the determination. Sutton now urges the following specifications of error:
1. That the court erred in applying the “beyond a reasonable doubt” burden of proof in rendering its decision that Sutton failed to sustain her burden of proof and,
2. That the trial judge was manifestly erroneous in failing to find that Monte-gut lacked the mental capacity to form testamentary intent on the date of the execution of the will.
Sutton’s experts, Shraberg and Roniger, were the only psychiatric experts to testify at trial. Dr. Meyer J. Hyman (Hyman), an expert in internal medicine with a subspe-cialty in pulmonary diseases also testified on behalf of Sutton. Lay testimony consisted of testimony from Sutton, Monette Montegut (Monette), Daniel Becnel (Bec-nel), Florence Dennis (Dennis), Alphonse Sutton, Judge Thomas J. Kliebert and Alta Pertuis. Interestingly, although Judge Kliebert and Alta Pertuis were defense witnesses, they actually testified in Sutton’s case-in-chief. No explanation is given in the record for this occurrence.
The trial judge heard conflicting medical and lay testimony regarding Montegut’s ability to execute a testament. In particular, the two psychiatric experts expressed opposite views. While Roniger stated that he had no question regarding Montegut’s ability to know what he wanted in any area, Shraberg testified that he had serious reservations about Montegut’s competency to confect a will. Although Hyman had no personal knowledge regarding competency, he did indicate that on October 5, 1978, almost one year prior to the date of the will, that a radiologist noted that Montegut lacked the capacity to sign permission for a contrast brain scan.
With regard to the lay testimony, Sutton, her husband, Alphonse Sutton, Dennis and Becnel all testified that Montegut was non-responsive at times. In addition, Becnel also stated that prior to 1977 Montegut would speak about his childhood as if he were still a child and that at times he would also act as if he were speaking to his mother.
Sutton stated that she noticed a significant change in Montegut’s behavior during the summer of 1977. He appeared to be severely depressed. She noted that he did not shave, nor did he seem interested in dressing himself. The date that she last remembered seeing Montegut was April 23, 1979, almost five months before the will was executed. On that date, she noted that Montegut refused to discuss certain business affairs with her. She attributed his lack of responsiveness to her conversation as well as his apparent lack of interest in a matter which had once interested him to be due to his disorientation and loss of reality.
On the other hand, Monette stated that Montegut stored facts very well and that he did not talk about things which made no sense. Judge Kliebert, the attorney who prepared the will, testified that he knew Montegut for a period of ten to twelve years. He remembered that on the date the will was executed Montegut was able to comprehend and communicate his wishes. His testimony was corroborated by his secretary, Alta Pertuis. She was a *895 witness to the will who also recalled the occasion. She stated that Montegut did not appear confused or disoriented. She also remembered that the will was read aloud to him and that he stated that its provisions expressed his desires.
JUDGMENT OF DISMISSAL
We have previously held that the burden of proof as it relates to a motion for dismissal in a judge trial is that of proof by a preponderance of the evidence. Poyner v. Cure, 443 So.2d 1151 (La.App. 5th Cir.1983); writ denied, 446 So.2d 1225 (La.1984); Rose v. Louisiana Power & Light Co., 474 So.2d 1006 (La.App. 5th Cir.1985). See also Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980).
“When a party fails to carry its burden of proof there is no necessity for the opposing party to rebut insufficient evidence. Article 1672 of the Code of Civil Procedure was amended to allow a trial judge to rule when the plaintiff has failed to show a right to relief. La.C.C.P. art. 1672 B.” Harvill v. Casey, 461 So.2d 373, 375 (La.App. 2nd Cir.1984); writ denied, 464 So.2d 318 (La.1985).
Therefore, pursuant to Art. 1672(B)[2] the trial judge must weigh and evaluate all of the evidence presented in determining whether to grant the motion for dismissal. He has much discretion in making that determination. Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3rd Cir.1984); Burrell v. Kirkpatrick, 410 So.2d 1255 (La.App. 3rd Cir.1982).
However, although normally the standard of proof required for a dismissal in a judge trial is proof by a preponderance of the evidence, the instant case requires that a higher standard be utilized.
In Succession of Lyons, 452 So.2d 1161 (La.1984), the Louisiana Supreme Court established the standard of proof regarding the lack of testamentary capacity. In setting forth the standard, the Lyons court held that:
[t]he capacity to make a will is tested at the time the will is made. L.S.A.-C.C.P. art. 1472. To make a donation mortis causa, a person must be of sound mind. L.S.A.-C.C. art. 1475. The question is whether the testator understood the nature of the testamentary act and appreciated its effects. Succession of Moody, 227 La. 609, 80 So.2d 93 (1955). The burden of proving lack of testamentary capacity is upon the party alleging it. Succession of Schmidt, 219 La. 675, 53 So.2d 834 (1951). Succession of Riggio, 405 So.2d 513 (La.1981) [on remand 468 So.2d 1279 (La.App. 1st Cir.1985), writ denied 472 So.2d 33 (La.1985).]
There is a presumption in favor of testamentary capacity. Succession of Mithoff 168 La. 624, 122 So. 886 (1929); Succession of Lambert, 185 La. 416, 169 So. 453 (1936); and Succession of Riggio, supra. Id. at 1164.
The presumption of capacity must be overcome by clear and convincing evidence. Lyons, supra. This burden of proof requires more than a “preponderance of the evidence” but less than “beyond a reasonable doubt. “The existence of the disputed fact must be highly probable, that is, much more probable than its non-existence.” Lyons, supra at 1165.
Therefore, the trial judge was constrained by Lyons, supra, to apply the clear and convincing standard. Appellant, however, asserts that the trial judge applied the highest standard of proof, that is, beyond a reasonable doubt.
The trial judge indicated in his reasons for judgment that he was mindful of the presumption which exists in favor of testamentary capacity. However, he did not *896 state the standard for the burden of proof he adopted. Although counsel for defendants urged that he adopt the “beyond a reasonable doubt” standard, there is no indication at trial or in his reasons as to whether he did in fact adopt that higher standard.
We do note, however, from the following discussion that the trial judge did not misapply the law as set forth in Lyons, supra, nor did he arrive at a decision which was clearly wrong and manifestly erroneous.
The trial judge’s finding of testamentary capacity is a factual one which will not be disturbed on appeal unless clearly wrong and manifestly erroneous. Succession of Caprito v. Mayhew, 478 So.2d 243 (La.App. 3rd Cir.1985), writ denied 481 So.2d 1331 (La.1986). We find no manifest error.
In his reasons for judgment, the trial judge stated that the only evidence in support of Sutton’s position was Shra-berg's testimony. He concluded, however, that Shraberg’s testimony was theoretical when he indicated that:
[tjhere is no evidence to support plaintiff, Marjorie Sutton’s allegations, except for some theoretical testimony by Dr. Schraberg [sic]. It is not sufficient to show that a testator is gravely ill and suffering from numerous serious disorders to render a will invalid; the test to determine his testamentary capacity is whether or not he had capacity at the time he made the will to do so. [emphasis added],
Shraberg stated that since he did not treat Montegut after 1978 he could only “extrapolate” from his experiences with Montegut in order to determine his ability to execute a will on September 5, 1979.
The trial judge evidently accorded no weight to Shraberg’s testimony of Monte-gut’s purported incapacity to confect a will. Moreover, he was obviously persuaded by Roniger’s testimony to the effect that he had no question about Montegut’s ability to know what he wanted. Roniger further testified that he suspected that this ability would apply to making a will. Importantly, although some of the lay witnesses remarked that Montegut was nonresponsive to conversations, Roniger explained this behavior as a manifestation of how Montegut felt rather than as a reflection of a lack of the ability to communicate.
Roniger’s testimony relative to Monte-gut’s ability to communicate his desires was corroborated by Judge Kliebert and Alta Pertuis, both of whom saw Montegut on the date he executed the will.
We also note that Sutton had presented her case completely. In fact, certain defense witnesses were actually called during her case-in-chief. She had the opportunity to cross-examine these witnesses. The only other evidence which could conceivably be introduced would be evidence which would corroborate the other evidence already submitted by the defense to the judge regarding the testator’s competency. We do not believe that the intent of L.S.A.C.C.P. art. 1672(B) was violated by the judge’s dismissal of a suit when only further corroborative evidence could conceivably be submitted by the defense and, when it is the defense who actually brought the motion for dismissal.
FRIVOLOUS APPEAL
The defendants/appellees have answered the appeal contending that the appeal is without basis in law or fact and is frivolous. They seek costs and attorney’s fees. In Jackson v. East Baton Rouge Par. Sch. Bd., 348 So.2d 739 (La.App. 1st Cir.1977), the court explained the basis for such a claim as follows:
[a]rticle 2164 of the Code of Civil Procedure authorizes a claim for damages for frivolous appeal, but its provisions are penal in nature and must be strictly construed. Appeals are favored, and the imposition of penalties for a frivolous appeal will not be granted unless they are clearly due. Damages for frivolous appeal will not lie unless it manifestly appears that the appeal was taken solely for delay or that appealing counsel does not seriously believe in the position he advocates, even though the appeal lacks serious merit. [Citations omitted]. Id. at 741.
*897 However, “[d]amages for frivolous appeal are not allowable unless it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view he advocates even thought the court is of the opinion that such view is not meritorious.” Parker v. Interstate Life and Accident Insurance Company, 248 La. 449, 179 So.2d 634, 636 (La.1965).
Counsel argues that appellant did not file her brief timely and that her failure to do so coupled with the absence of any serious legal or factual question leads to the only assumption that she appealed solely for delay. While counsel is correct that appellant failed to file her brief in a timely fashion, nevertheless, we are convinced that her position on appeal is grounded on a sincere belief that Montegut lacked competency when he executed the will.
Sutton testified to changes she saw in Montegut. She found him to be confused almost five months before the will was confected. Her testimony was corroborated by Shraberg who related that he did not find that Montegut would have the capacity to execute a will.
Furthermore, since the trial judge failed to indicate which standard of proof he used in making his determination, there exists a question of whether the trial judge misapplied the law.
Although her appeal lacks merit, Sutton’s sincerity in her claim is demonstrated by the existence of both factual and legal questions. Accordingly, there is no merit to appellee’s claim for damages for a frivolous appeal.
Furthermore, for the reasons stated the judgment of the dismissal of Sutton’s petition to annul the testament executed by Montegut is affirmed at appellant’s cost.
AFFIRMED.

. L.S.A.-R.S. 9:2443 provides for a statutory will when the individual suffers from sight impairment as did Montegut.

. L.S.A.-C.C.P. art. 1672(B) [formerly L.S.A.-C. C.P. art. 1810(B) ] was transferred from the Jury Trials Section by Acts 1983 No. 534. It states:
[i]n an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.