694 So.2d 257 (1994)
William LOCKE and Natalie Locke
v.
SHERIFF, PARISH OF JEFFERSON.
Nos. 94-CA-652 C/W 94-CA-653.
Court of Appeal of Louisiana, Fifth Circuit.
December 28, 1994.
Clarence F. Favret, III, Dean J. Favret, Favret, Demarest, Russo & Lutkewitte, New Orleans, for plaintiffs/appellants William Locke and Natalie Locke.
Edmund W. Golden, Golden & Fonte, Metairie, for defendant/appellee Harry Lee, Sheriff for the Parish of Jefferson.
Before BOWES, DUFRESNE and WICKER, JJ.
BOWES, Judge.
Plaintiffs, William and Emily Locke, appeal a judgment of the district court in favor of the defendant, Harry Lee, as Sheriff of *258 the Parish of Jefferson. For the following reasons we affirm.

FACTS
On March 30, 1991, William and Emily Locke were involved in a collision with an automobile being driven by Michael Tillman; Tillman, a deputy in the sheriff's office, was responding to an emergency call in the course of his employment. The sheriff's vehicle was heading southbound on Ames Boulevard in the right-hand lane near the intersection with eastbound Barataria Boulevard. The Locke vehicle was travelling east on Barataria, and had the benefit of the green light. Both vehicles approached the intersection and collided at approximately the center of the median. The Locke vehicle was hit broadside, causing it to roll over and come to a stop near the southwest corner of the intersection.
The Lockes were injured in the accident and filed suit against the sheriff's office for damages. In a companion case, the Lockes and their insurers, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, filed suit for the damages to the Locke's vehicle, for medical payments covered by their insurance, damage to certain property contained within the automobile, and the insurance deductibles which the Lockes were required to pay. The cases were consolidated for trial, which trial was begun on March 14, 1994.
Following presentation of the plaintiff's case, the sheriff moved for an involuntary dismissal. After taking the matter under advisement, the trial court granted defendant's motion, dismissing the suit. The Lockes have appealed; their insurers have not.

ANALYSIS
Article 1672(B) of the Code of Civil Procedure states:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
The burden of proof in these cases has been defined by the jurisprudence.
We have previously held that the burden of proof as it relates to a motion for dismissal in a judge trial is that of proof by a preponderance of the evidence. Poynor v. Cure, 443 So.2d 1151 (La.App. 5th Cir. 1983); writ denied, 446 So.2d 1225 (La. 1984); Rose v. Louisiana Power & Light Co., 474 So.2d 1006 (La.App. 5th Cir.1985). See also Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980).
When a party fails to carry its burden of proof there is no necessity for the opposing party to rebut insufficient evidence. Article 1672 of the Code of Civil Procedure was amended to allow a trial judge to rule when the plaintiff has failed to show a right to relief. La.C.C.P. art. 1672 B." Harvill v. Casey, 461 So.2d 373, 375 (La. App. 2nd Cir.1984); writ denied, 464 So.2d 318 (La.1985).
Therefore, pursuant to Art. 1672(B) the trial judge must weigh and evaluate all of the evidence presented in determining whether to grant the motion for dismissal. He has much discretion in making that determination. Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3rd Cir.1984); Burrell v. Kirkpatrick, 410 So.2d 1255 (La. App. 3rd Cir.1982)."

Succession of Montegut, 508 So.2d 892 (La. App. 5 Cir.1987). (Emphasis supplied).
The trial court is not required to view the evidence in the light most favorable to the plaintiff. It may weigh and evaluate all the evidence presented up to that point and order a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. Shafer v. State of Louisiana, Through DOTD, 590 So.2d 639 (La.App. 3d Cir.1991). Butler v. Zapata Haynie, 633 So.2d 1274 (La.App. 3 Cir.1994).

*259 The burden of proving negligence by a preponderance of the evidence rests on the alleging party. Additionally, a preponderance of the evidence is evidence of greater weight or evidence which is more convincing than that offered in opposition to it. Thus, the existence of negligence is a factual finding which cannot be reversed unless it is shown to be manifestly erroneous or clearly wrong.

Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694 (La.App. 1 Cir.1993).
Further, witnesses are not counted, but weighed: the weight to be given evidence is not determined by the number of witnesses on either side. Duhon v. Slickline, Inc., 449 So.2d 1147 (La.App. 3 Cir.1984), cert. denied, 452 So.2d 172 (La.1984).

Bienvenu v. State Farm Mut. Auto. Ins. Co., 545 So.2d 581 (La.App. 5 Cir.1989).
It is apparent from the above that in order to grant the motion for involuntary dismissal, it was necessary for the trial court to find that the plaintiffs did not prove their case by a preponderance of the evidence.
The standard of care required of the defendants is found in La.R.S. 32:24 which reads as follows:
Sec. 24. Emergency vehicles; exceptions
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
La.R.S. 32:125 contains the duties of a motorist when confronted with an emergency vehicle:
Sec. 125. Procedure on approach of an authorized emergency vehicle
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.
With these standards in mind, we now examine the evidence produced by the plaintiff at trial.

EVIDENCE
Officer Tillman testified that he has been employed by the Jefferson Parish Sheriff's Office for six years as a road deputy. On the day of the accident, Tillman had no partners with him when he received a "Code 2" disturbance call. (This is a priority call in *260 which, according to sheriff's office policy, the officer is allowed to speed, to use lights, a siren and to proceed through stop signs, although precautionary measures are required). He put on his flashing lights and headed southbound on Ames Boulevard in the right hand lane. As he approached the intersection at Barataria, there was a red light; Tillman stopped at the light and waited for the oncoming traffic. Once the traffic stopped, he was able to proceed to the middle of the median before stopping again. At that point there was a car in the U-turn lane which he attempted to look over. Because of that difficulty, he began to inch his vehicle ahead. Although the way looked clear to him, within seconds, he collided with the Locke vehicle. His speed at this point did not exceed five miles per hour. Before he got to the intersection, traffic had yielded to him because he had the emergency lights and siren on. He was certain that his emergency equipment was working.
Officer Tommy Welch investigated the accident for the sheriff's department and wrote the accident report, which was admitted into the record. He testified that Tillman gave essentially the same factual story at the time of the accident as he did at trial. Officer Welch also stated that Mr. Locke told him, at that time, that he (Locke) proceeded through the intersection when the light turned green and did not see the police car. Welch noted on the report that Tillman violated a traffic control light, but did not issue a citation because he felt that Tillman's actions were in compliance with the policy of the sheriff's office in responding to "Code 2" calls.
There were several witnesses to the accident whose names Welch noted appeared on the report, none of whom were called to testify (although several other witnesses whose names did not appear later testified on behalf of plaintiffs, infra). As the investigating officer, he noted no physical obstruction which would have precluded these witnesses from observing the emergency lights and sirens; further, these witnesses named in the police report made statements consistent with Tillman's version of events.
Thomas Weckesser, an independent witness, stated that he was travelling eastbound on Barataria directly behind the Locke vehicle, but insisted that they were in the right lane. There was traffic to his left in the passing lane. The light was green in their favor as the Locke van proceeded through the intersection; at that moment he looked to his left and "in a flash" the police car struck the van. He stated that he did not see the flashing emergency lights or the police vehicle itself until the impact, and did not hear any siren. He did not see the police car slow down or stop at the median. Under cross-examination, he stated that his windows were up and his air conditioner turned on.
Pamela Weckesser, wife of Tom, also testified largely to the same effect as her husband. She saw the lights just a second before the impact, but heard no siren. She did not see the police car slow down.
Norvise Brown was also called by plaintiff to testify. She was at the red light on Ames waiting to make a U-turn when she saw the police car go around another car, cross over Ames and stop at the intersection with Barataria to wait for westbound traffic to clear. The car then entered Barataria and the accident occurred. She later testified that the police car did not stop before entering eastbound Barataria. She did not recall seeing flashing lights, and did not hear a siren, although the police car travelled directly in front of her. She felt that the car increased its speed as it passed through the median. She also stated that other traffic westbound on Barataria had yielded to the police vehicle.
Sandy Lilliman, also a witness called by plaintiff, was in a parking lot on Barataria and Ames. She saw the police car come across Ames and strike the Locke vehicle. According to her testimony, the officer did not stop for westbound traffic. Following the accident, she noticed that the light on top of the car had been knocked off (despite photographic evidence that following the accident, the light was on top of the vehicle), but she did not notice either flashing lights or sirens. She also felt that the car sped up as it entered Barataria.
*261 John Parfait testified that the Locke van was not in the right hand lane prior to the accident. He saw the police car right before it entered westbound Barataria and noticed flashing red lights, but did not recall a siren. However, he added the following: "Just recently, I went through that intersection, and there was a police car coming across. He did have his siren on, but I couldn't tell until I was right in the intersection that his siren was on." Mr. Parfait is not hearing impaired. Additionally, he could not remember whether the police vehicle slowed down as it entered the intersection.
Mrs. Locke testified that they were travelling eastbound on Barataria, in the left lane. When the light turned green in their favor, a vehicle in the right-hand lane proceeded through the intersection at Ames; when they were into the middle of the intersection she first saw the police car, which did not have on its flashing lights or siren. The vehicle seemed to accelerate as it sped through the intersection, striking their van.
Mr. Locke, who drove the van, testified that while travelling east on Barataria he was about 120 feet from the intersection at Ames when the light turned green in his favor. He noticed a car in the right hand lane taking off slowly "... and I was watching him. I didn't know what he was going to do, if he was going to turn or what. He didn't have his signal on. So I was watching him ... and when the light turned green he started to go but he was taking off real slow. And I was watching him to see, you know, what he was going to do, if he was going to turn or what."
The car on the right made it through the intersection as Mr. Locke came up on his left, in the left lane, he got halfway through the intersection when his wife gaspedhe looked to the left just as they were hit. He saw no flashing lights and heard no siren. As he approached the intersection, he was listening to a (musical) tape and was engaged in conversation with his wife.
On cross-examination, Mr. Locke stated that, from the time the light turned green until he reached the intersection, his attention was on the slow moving car in the right hand lane.
In its reasons for judgment, the trial court made the following observations:
The plaintiff (sic) called several eye witnesses on their behalf at trial. Their testimony was inconsistent and contradictory. Some testified that Deputy Tillman either had on his lights or his siren and some testified they were not sure. Some witnesses testified that they were unsure whether Deputy Tillman stopped or slowed down before entering the intersection, yet others testified that they stopped or yielded the right-of-way to Deputy Tillman's unit which was in clear view.
Deputy Tillman testified that his overhead lights and siren were continuously operating and he was attempting to look for traffic at all times. Tillman testified that he slowed at the intersection because his view was partially obscured by a vehicle in the left turning lane and he proceeded slowly and continued to look to his right for traffic.
LSA-R.S. 32:24, [supra] ... does not protect the driver from the consequences of his reckless disregard for the safety of others. Therefore, the question before the court is whether the officer acted with due regard for the safety of all persons. Based on the witnesses testimony and as the court perceived their veracity and knowledge of the facts the Court does not believe that the plaintiffs have carried their burden of proof to show that Deputy Tillman acted with careless disregard for the safety of the public.
Our standard of review has often been cited to us from Stobart v. State through DOTD, 617 So.2d 880 (La.1993) as follows:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes *262 that the finding is clearly wrong (manifestly erroneous).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'"
This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.". Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
As the above summary of the testimony discloses, we find that the trial court was correct in finding that the testimony of plaintiff's witnesses was inconsistent and confusing. Consequently, there is no basis in the record for a finding by us of manifest error; as the determination of the trial court was a reasonable one based on credibility evaluations resolved in favor of the defendant.
Appellants urge that the trial court did not apply the proper standard of care. We disagree. Under the statute, the driver of an emergency vehicle has the duty "to drive with due regard for the safety of all persons" and is not protected from the consequences of his reckless disregard for the safety of others. This is the language used by the trial court in the reasons for judgment, along with the phrase "careless disregard," see supra.
Accordingly, having found no manifest error, we hold that the judgment of the trial court is correct and that plaintiffs did not carry their burden of proof by a preponderance of the evidence, the standard of proof required by them. Accordingly, we see no abuse of discretion in the granting of the involuntary dismissal.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to plaintiffs.
AFFIRMED.