750 So.2d 1027 (1999)
Jack R. BAGGETT
v.
SCHWEGMANN GIANT SUPER MARKETS.
No. 99-CA-421.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1999.
*1028 Joseph S. Russo, Jefferson, LA, Attorney for Appellant.
George R. Blue, Jr., Metairie, LA, Attorney for Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and MARION F. EDWARDS.
EDWARDS, Judge.
Plaintiff Jack Baggett appeals a judgment of the district court dismissing his cause of action against Schwegmann Giant Super Market Inc. (Schwegmann's).
Plaintiff alleged that on February 7, 1996, he fell while shopping at Schwegmann's on Airline Highway. He averred that while walking down an aisle he slipped on water which was standing on the floor. The petition stated that the defendant had actual or constructive notice because the water was coming from a freezer or cooler which had been leaking on the side of the aisle for several days.
Trial was held, and at the completion of plaintiff's case, the defendant moved for a voluntary dismissal, which was granted by the trial court. The court found that plaintiff did not prove that defendant had constructive notice. Plaintiff moved for a new trial, which was granted limiting the trial to re-argument only. Nevertheless, at the new trial, the court took additional testimony from Jose Garcia, the refrigerator repairman, following which the court ruled again in favor of defendant and dismissed *1029 plaintiffs case. From this judgment plaintiff has appealed.
At trial, Mr. Baggett testified that he had been disabled from employment for approximately 15 years. Formerly a maintenance electrician at Avondale Shipyards, he had dystrophy in his left arm and chest, and neuropathies in his legs and arms. Plaintiff had injured his knee in 1986, and on January 17, 1996, he had arthroscopic surgery on that knee. He was healing well and on February 17, 1996, went shopping with his wife at the Superstore. He proceeded down the aisle to get frankfurters and on the way back, he slipped. He didn't see what he stepped in. There was some water on the floor, extending across the aisle from one freezer to another, an area about 4 or 5 feet wide. About five minutes later, a store employee came and took information on the accident. There were no warning cones on the floor. After the accident an employee was instructed to get such cone.
According to the plaintiff, the water was possibly coming from the area where two freezer cases joined together. He could see it coming out very slowly from the crack between the cases. He did not know if the freezers were still running at the time, and no one was mopping up the water. He did not see anyone inspecting the area. There were no paper towels in the wet area. The floor was very glossy and the light very bright so that plaintiff could not have seen the water. Pictures taken the next day in the area where plaintiff fell indicate that paper towels were stuffed underneath the case which was leaking. On cross examination, plaintiff testified that the water on the floor was clear, not dirty or discolored. However, because of the amount of water on the floor and the fact that it was not coming out quickly, plaintiff felt the water had to have been there longer than five minutes. Plaintiff saw the repairman on a subsequent trip to the store working on the freezer case.
Mrs. Baggett saw her husband fall, but was afraid to go to him because she saw the large puddle and was afraid of falling herself. Mrs. Baggett uses a cane. She had not been in that aisle prior to her husband's fall. She did not know how the water got on the floor or how long it had been there, but saw that it was coming from the case.
Plaintiff also presented the testimony of Keith Michael Cox, who was the assistant store manager on the date of the accident. Mr. Cox testified that he did not recall whether Schwegmann's had written instructions for employees relative to aisle inspection and customer safety. He was aware that loss prevention officers would check the stores for hazards, but all the employees were asked to be mindful of any dangers. However, he did not find the employees followed that directive. If a customer had an accident in the store, it would be reported to the loss prevention officer in the store at that time. The accident in question was never reported to the witness, although he signed the accident report, and he never spoke with the plaintiff. The loss prevention officer would have investigated the accident and prepared the report, and Cox's signature merely indicated that the report was complete. He had no independent recollection of the incident. On the day in question, he must have walked down Aisle-R, where the accident took place at various times, but did not recall seeing any water nor remember any paper towels being placed under the refrigerators there. He did not recall if warning cones were later placed in the area where the water collected. Had he seen water he would have gotten someone to clean it up. Generally, cleanup procedures required that when a spill is discovered, an employee would clean it up. If there was a leaking refrigerator case, maintenance would be called to repair it. If the refrigerator continued to leak, safety cones would be put out. He did not recall if such was done in this case. Either the manager, the assistant manager, or the loss protection officer could make a repair request. He did not recall making such a request in the present case. He did not *1030 recall any problems with the operation of the freezer cases in that particular store. He did remember occasions when paper towels were placed near a freezer to attempt to control the flow of water. He did not recall specific instances.
Relative to the accident report, Cox had no independent knowledge of whether the loss prevention officer determined the source of the water on the floor.
Jose Garcia was a maintenance man employed by Schwegmann's to repair refrigerators. On the evening of plaintiff's accident he was called to the store and looked at a case on the frozen food aisle that had problems. He saw that it was iced up and that the ice was over the drain. He went into the compressor room and shut off the liquid line valve, allowing the case to de-ice itself. He noticed water on the floor that night, and there were paper towels positioned underneath the case. Normally when a case is leaking, the store personnel put paper towels down to stop some of the water. There were also warning cones placed on the floor.
He couldn't tell where the water was coming from. For the case to ice up there had to be liquid in the pan. When the drain is stopped up, the water cannot flow and when the refrigeration comes back on, the water freezes. If the drain becomes clogged, the water sits in the drip pan inside the sealed case. The water stays inside the box unless there is a leak in the box. The personnel at that store cleaned the cases well. The witness never had a problem with those cases. That case did not have a history of leaking, and he was never called to repair a seal on that case. There was nothing to indicate to Mr. Garcia that the water on the floor came from the case. If there was a leak in the box, water would leak even if the drain was not clogged. Mr. Garcia returned the next day and the ice was gone, the drain clear. There was no water on the floor. The witness opined that something could have been clogging the drain causing it to ice up and when the water started flowing again, the problem was cleared.
The appropriate standard for the trial judge to use to determine the merits of the motion to dismiss is whether the plaintiff has presented sufficient evidence to establish his case by a preponderance of the evidence. Yoes v. Shell Oil Co., 95-12 (La.App. 5th Cir. 5/10/95), 657 So.2d 241, writ denied, 95-2087 (La.11/17/95), 663 So.2d 714. Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proved is more probable than not. Brown v. Bowler, 94-667 (La.App. 5th Cir. 5/10/95), 659 So.2d 799. Although plaintiff-in-rule is not entitled to any special inferences in his favor, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. Brown v. Bowler, supra. Our review of the trial court's determination is based on whether or not there is manifest error. 2304 Manhattan Blvd. v. Power & Light Co., 94-192 (La.App. 5th Cir. 9/14/94), 643 So.2d 1282.
Roberts v. Roberts 97-368 (La.App. 5th Cir. 9/30/97), 700 So.2d 1099, 1101.
The trial court is not required to view the evidence in the light most favorable to the plaintiff. It may weigh and evaluate all the evidence presented up to that point and order a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. Succession of Montegut, 508 So.2d 892 (La.App. 5th Cir.1987); Butler v. Zapata Haynie, 633 So.2d 1274 (La.App. 3 rd Cir.1994). Pursuant to Art. 1672(B) the trial judge must weigh and evaluate all of the evidence presented in determining whether to grant the motion for dismissal. He has much discretion in making that determination. Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3 rd Cir.1984); Succession of Montegut supra.
*1031 At the time of the accident, La. R.S.9:2800.6 read in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) `Constructive notice' means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97); 699 So.2d 1081, 1084. The court in White continued:
Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
A trial court's determination of whether a merchant had actual or constructive notice of a condition creating an unreasonable risk of harm to its customers is a factual finding which may not be set aside absent a showing of manifest error. Stewart v. Great Atlantic and Pacific Tea Co., 94-1592 (La.App. 4th Cir. 3/16/95); 657 So.2d 1327, 1330; Diez v. Schwegmann Giant Supermarkets, Inc., 97 0034 (La. App. 1st Cir. 2/20/98), 709 So.2d 243, 247.
In White, supra, plaintiff slipped into a clear liquid and fell. She produced no evidence that the defendant created or had actual notice of the spill, and no evidence as to how long the spill had been on the floor. The court found that the statute is clear and that to prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care. White, supra, at 1086.
In the present case, the evidence does not show that the defendant created or had actual knowledge of the hazardous condition. Neither was there proof that the condition existed for any period of time prior to plaintiff's fall so as to require the defendant to have discovered its existence through the exercise of ordinary care. Evidence showed that there was water on the floor, but not that it was the result of the leaking freezer. The testimony of Mr. Garcia leads to the opposite conclusion. There was no indication of the actual *1032 source of the water to provide even an inference of the length of time it may have been present. Proof of constructive knowledge in these cases is an onerous burden. Cooper v. Wal-Mart Stores, Inc., 97-1723 (La.App. 1st Cir. 12/9/98), 725 So.2d 51, 54; White v. Wal-Mart, supra. As the Cooper court stated, the status of the law is that merchants can only be held liable when the slip and fall claimant can carry the burden of proving the injury causing condition was on the floor for such a period of time that the merchant would discover the condition in the exercise of reasonable care. We must require compliance with that applicable law. Plaintiff failed to carry his burden of proof by a preponderance of the evidence.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are taxed to plaintiff.
AFFIRMED.