659 So.2d 799 (1995)
James H. "Jim" BROWN, Commissioner of Insurance for the State of Louisiana and as Liquidator of Pelican State Mutual Insurance Company
v.
Michael J. BOWLER.
No. 94-CA-667.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1995.
*800 Nathan T. Gisclair, Jr., Edmond C. Haase, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for plaintiff/appellant.
Paul A. Bonin, Kim Raines Chatelain, Bonin Law Firm, New Orleans, for defendant/appellee.
Before KLIEBERT, GAUDIN, WICKER, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
In this case, plaintiff appeals an involuntary dismissal rendered against him at the conclusion of his case-in-chief at trial. For the following reasons, we vacate and remand.
FACTS
On November 15, 1991, defendant, Michael J. Bowler, executed a written lease with Pelican State Mutual Insurance Company (Pelican), to rent the ground floor (consisting of 6,500 square feet) of 828 Canal Street, New Orleans, Louisiana, to be used as "Toot's Restaurant." The lease was for a term of thirty-one years and rent consisted of five percent of the annual net sales of the restaurant. Part of the six-page lease[1] included the obligation for Bowler "to pay all bills for water, light and similar charges."
On February 26, 1993, plaintiff, James H. "Jim" Brown was appointed liquidator of Pelican in his capacity as the Commissioner of Insurance for the State of Louisiana after Pelican was declared insolvent. On July 1, 1993, plaintiff brought suit against defendant in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana (defendant's domicile) for recovery of unpaid utility charges. The matter proceeded to trial on April 28, 1994.
At trial, after plaintiff rested, defendant moved for an involuntary dismissal pursuant to LSA-C.C.P. art. 1672B, which was granted by the trial court. Plaintiff thereafter brought this appeal.

*801 ANALYSIS

At the trial on the merits, plaintiff introduced into evidence twenty uncontested facts listed in plaintiff's pre-trial order (all of which were stipulated-to by defendant). Relevant uncontested facts include:
* * * * * *
2. In December of 1989, Pelican became the owner of the building and premises located at 828-830 Canal Street, New Orleans, Louisiana.
3. Michael J. Bowler is a person of the full age of majority, domiciled in Jefferson Parish, and was the former president and chairman of the board of Pelican.
4. Pelican and Bowler entered into a written lease for certain premises owned by Pelican at 828 Canal Street, New Orleans, Louisiana, which lease is dated November 15, 1991 and was amended in writing dated June 29, 1992.
* * * * * *
8. Pelican was placed into liquidation by order of the 19th Judicial District Court, State of Louisiana, on February 26, 1993.
9. In the Order of Liquidation, James H. "Jim" Brown was appointed liquidator of Pelican in his capacity as Commissioner of Insurance, State of Louisiana.
10. The lease between Pelican and Bowler provides in the last paragraph of page 6[2] that: "Lessee is obligated ... to pay all bills for water, light, and similar charges."
11. For the period February 19, 1992 through May 1993 the premises leased to Bowler by Pelican were occupied and used for the operation of Toot's Restaurant.
12. Rent was paid by Bowler to plaintiff in accordance with the lease provisions, for the period August 1992 through May 1993.
13. No payment of any utility charges has been made by Bowler to petitioner for the period February 19, 1992 through June 23, 1993.
At trial, plaintiff offered the testimony of Don Scardino, C.P.A., who worked for Heritage Management Company, which was under contract with plaintiff to manage the rehabilitation and subsequent liquidation of Pelican. Mr. Scardino's duties included overseeing the payment of bills and collection of receivables in the accounting area during the rehabilitation and liquidation. Mr. Scardino testified that he received the utility bills for the electricity used and recorded by the "home meter," which serviced certain areas of the Canal Street building. Besides Toot's Restaurant, the home meter apparently serviced other non-leased areas of the building. Mr. Scardino also testified that the electrical bills were paid by plaintiff.
Mr. Scardino further testified about the calculations of Toot's portion of the electrical bills. Because the home meter also recorded electrical use not associated with the restaurant, Mr. Scardino testified that he calculated Toot's portion of those bills by taking an average month's bill of the home meter prior to Toot's opening and subtracting that from the total bill for those months when the lease with defendant was in existence.
After Mr. Scardino's testimony, plaintiff rested. Thereafter, defendant moved for an involuntary dismissal, which the trial court granted. In his reasons for granting the dismissal, the trial judge stated:
I believe that because the lease itself was ambiguous and the proofproof has not been given to this court through evidence, by a preponderance of the evidence as to what, in fact, anything owed may be, although there is probably something owed but we can't guess at it and we can't make up something. I believe that counsel is correct and I will grant the motion for involuntary dismissal and ask that the main demand be dismissed at the plaintiff's cost.

INVOLUNTARY DISMISSAL
LSA-C.C.P. art. 1672B provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, *802 the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
When a motion for dismissal at the close of plaintiff's evidence is made, such as in the case sub judice, the trial court should apply the preponderance of the evidence standard in weighing and evaluating the evidence. Mott v. Babin Motors, Inc., 451 So.2d 632, 637 (La.App. 3d Cir.1984); Bradley v. Hunter, 413 So.2d 674, 676 n. 3 (La. App. 3d Cir.1982), writ denied, 415 So.2d 952 (La.1982). Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proved is more probable than not. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366, 369 (La.App. 2d Cir.1988). Brouillette v. Ducote, 634 So.2d 1243, 1246 (La.App. 3 Cir.1994), citing G.B.M., Inc. v. Juna Corp., 611 So.2d 825, 829 (La.App. 3 Cir.1992).
Although plaintiff is not entitled to any special inferences in his favor, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. Fuller v. Wal-Mart Stores, Inc., supra at 369.
As stated, the trial court granted defendant's motion for involuntary dismissal because he felt that plaintiff failed to prove by a preponderance of the evidence what, if anything, he was owed. While plaintiff may have failed to adequately prove in his case-in-chief the exact amount he was owed, the stipulated and uncontested facts introduced at trial by plaintiff proved: 1) that defendant was obligated (via the lease) to pay the utility bills of the leased area during the term of the lease and 2) defendant failed to pay any of the utility bills during the term of the lease.
In his oral reasons for the dismissal at trial, the trial judge apparently was troubled with the plaintiff's lack of proof regarding the exact amount of damages to which he was entitled. However, the operative phrase in art. 1672B which gives the trial court the authority to grant an involuntary dismissal is that plaintiff failed to show a right to relief. Failing to adequately prove the amount of damages to which one is entitled in his case-in-chief is not the equivalent of failing to show a right to relief for purposes of art. 1672B. In the matter before us, pursuant to the uncontested facts as recited above, plaintiff did show a right to relief. The trial court was therefore manifestly erroneous in granting defendant's motion for involuntary dismissal.
For the foregoing reasons, the judgment of the trial court, granting the defendant's involuntary dismissal and dismissing the principal demand with prejudice, is hereby vacated. The matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are cast against defendant.
VACATED AND REMANDED.
CANNELLA and WICKER, JJ., dissent.
CANNELLA, Judge, dissenting.
The facts in this case are basically uncontested. The sole issue is whether Brown proved the amount of utilities owed by Bowler under the lease. The lease did not provide for an apportionment of utilities or the manner in which the amount was to be calculated. It only states that: "Lessee is obligated... to pay all bills for water, light, and similar charges." Bowler paid no utilities during or after the occupancy of the premises for the operation of Toot's Restaurant.
At trial, only one witness testified for Brown. Don Scardino, a certified public accountant, worked for Heritage Management Company, which was under contract with Brown to manage the rehabilitation and subsequent liquidation of Pelican. Scardino's duties included overseeing the payment of bills and collection of receivables in the accounting area during the rehabilitation and liquidation.
Scardino stated that the electrical bills were paid by Brown after he took over management of the affairs of Pelican. At issue is whether the method used to calculate the amount owed by Bowler was reasonable and *803 establishes an amount owed based on quantum meruit. Scardino testified that he received the utility bills for the electricity used and recorded by the "home meter," which serviced various areas of the Canal Street building. Besides Toot's Restaurant, the meter serviced common and other leased areas of the building. Concerning the calculation of Toot's portion of the electrical bills, Scardino stated that he calculated Toot's portion of those bills by taking an average month's bill from the home meter prior to Toot's opening and subtracting that from the total bill for those months when the lease with Toot's was in existence. Scardino had no personal knowledge of the contract or the parties' intent. Scardino testified that he was not able to separate the utilities used and owed by Toot's from the utilities used and owed by the non-Toot's portions of the building, which included the foyer area leading to the elevators and the elevators. He indicated that the non-Toots areas consumed electricity for lights, air-conditioning and the operation of the elevators. He further stated that he did not know how many air-conditioning units served that area. As a result, he was not able to state how much utility service Toot's actually used or how much utility service the non-Toots areas actually used. Therefore, the calculation used by Scardino is correct only if the electrical usages of the other tenants and the common area is constant and remains the same. If they change, then Toot's amount will change, even if Toot's actual usage were unchanged. This is the error in calculation that the trial judge saw and the reason why he found that Brown did not prove his case.
Scardino stated that the factor of Bowler being billed twelve months after Toot's closed was because Brown intended to execute another lease with Pelican, but never did.[1]
After reviewing the evidence in this case, I conclude that the lease contains an ambiguous provision since it does not set out the manner in which the utilities are to be apportioned between the leased and the non-leased areas. Brown intended to re-write the lease and this supports both my and the trial judge's finding that the lease provisions were not clear. Further, no evidence of the parties' intent in this regard was presented at trial. Therefore, because he did not prove essential elements of his case, Brown is not entitled to recover under the lease provisions.
Brown asserts that the trial judge found that the allocation presented by him was reasonable, but he rejected it anyway. However, our review of the trial judge's reasons indicates that he did not find the allocation either reasonable or unreasonable due to the lack of evidence. Scardino's testimony showed that even he recognized the limitations of his method of calculation, that he admitted that another method was not devised in order to save money, that he failed to recognize the effect of seasonal changes and that he had no personal knowledge of what areas or usages are recorded on the bills which were used to charge Pelican.
After Scardino's testimony was completed, Brown rested. Thereafter, Bowler moved for an involuntary dismissal, which the trial court granted. In his reasons for granting the dismissal, the trial judge stated:
I believe that because the lease itself was ambiguous and the proofproof has not been given to this court through evidence, by a preponderance of the evidence as to what, in fact, anything owed may be, although there is probably something owed but we can't guess at it and we can't make up something. I believe that counsel is correct and I will grant the motion for involuntary dismissal and ask that the main demand be dismissed at the plaintiff's cost.
In deciding a motion for involuntary dismissal, the trial judge must evaluate the evidence according to whether the plaintiff proved his case by a preponderance of the evidence. I conclude that Brown did not meet his burden and thus, the trial judge did not err in granting the motion for involuntary dismissal.
*804 WICKER, Judge, dissenting, for the reasons assigned by Judge Cannella.
NOTES
[1] A one-page amendment to the lease was executed by the parties on June 29, 1992. None of the amendments to the original lease are relevant to the issue before us today.
[2] The provision is actually on page 2 of the lease.
[1] We note that under La.C.C. art. 2002, this failure to address the problem constitutes a failure to mitigate the damages allegedly suffered.