830 So.2d 462 (2002)
Barbara A. DAVIES, Plaintiff-Appellant,
v.
JOHNSON CONTROLS, INC., Defendant-Appellee.
No. 36,498-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
*463 Joseph Payne Williams, Metairie, Counsel for Plaintiff-Appellant.
Franklin H. Spruiell, Counsel for Defendant-Appellee.
Before CARAWAY, DREW and HARRISON (Pro Tempore), JJ.
CARAWAY, Judge.
This case reviews the burden of proof which the employee must present to overcome the legal presumption that an occupational disease was not contracted during her employment of less than one year and is therefore not covered by the Worker's Compensation Act. The worker's compensation judge ("WCJ") dismissed the plaintiff's claim for benefits for carpal tunnel syndrome following the presentation of her case at trial. For the following reasons, we affirm the judgment dismissing plaintiff's claim.

Facts
Barbara A. Davies ("Davies") started working for Johnson Controls, Inc. ("JCI") on November 1, 1999, building truck seats for use at Shreveport's GM plant. She found the job through the classifieds and took the pre-employment physical. After a week of orientation, she began working in the plant, on the "cardboard" assembly. After two weeks of cardboarding, she moved to the "marriage" job (also described as the "seat sequencer" or "tracking pan" job). This job consisted of one person on either side of the assembly line fastening the truck seat to the tracking pan using a high torque air gun. Davies' hands began hurting while she was on this job. Around December 9, she moved to *464 the "armrest" job where she worked for the next five weeks, when she was dismissed on January 12, 2000, for poor performance. The armrest job involved fastening side brackets and screws using a high torque air gun.
It was established at trial that Davies' carpal tunnel syndrome ("CTS") began in April, 1994, when she was employed as a temporary worker at the GM plant. Davies' complaints of her hands burning and aching worsened by November of that year, after she changed jobs on the assembly line. An orthopedic surgeon recommended electromyography ("EMG") and possible surgery, however Davies told the doctor she was "not interested" in further treatment. GM laid her off a short time later and she began working for a series of employers. Her hand problems diminished after 1994 while she performed non-assembly line work.
On December 12, 1999, a couple of days after starting the armrest job, Davies went to the emergency room complaining of hand pain, numbness, and tingling in both hands. She was referred to LSUMC's Ortho-Hand Clinic for follow-up. Nevertheless, after taking one sick day, she returned to the armrest job and her hand problems worsened. The plant nurse recommended placing her hands in ice to relieve the discomfort. Davies iced her hands up to three times each day.
The following month, she visited the emergency room of a local hospital, again complaining of burning and tingling in both hands. She was discharged with instructions to take ibuprofen for pain, wear hand splints at night, and to obtain nerve conduction studies and an evaluation by an orthopedic or hand surgeon. On January 12, 2000, she was terminated for poor job performance.
Thereafter, Davies obtained a neurology work-up. The neurologist's history noted the two month duration of Davies' symptoms and her similar problems almost six years earlier, for which she was treated conservatively. He attributed Davies' improvement between 1994 and 1999 to her no longer working as a laborer.
On April 20, 2000, Davis had a carpal tunnel release procedure on her right hand at LSUMC. Thereafter, the same procedure was performed on her left hand on September 28, 2000.
Davies' disputed claim for compensation alleged that both of her hands were injured at work on December 12, 1999, and that surgery would be required for the damaged nerves. The employer denied liability, arguing that the CTS existed prior to her employment and could not have manifested itself during the brief time that she worked on the assembly line.
The trial was held on August 14, 2001. JCI moved for an involuntary dismissal under La. C.C.P. art. 1672, based on plaintiff's failure to prove that the CTS was caused by her employment. The WCJ, in reasons orally assigned, relied on Dibler v. Highland Clinic, 27,274 (La.App. 2 Cir. 9/27/95), 661 So.2d 588, to find that Davies failed to carry the burden of proving that she had contracted an occupational disease, and that since Davies had worked at JCI for less than 1 year, she was subject to the provisions of La. R.S. 23:1031.1(D). The WCJ specifically ruled that Davies "contracted carpal tunnel sydrome [syndrome] in this case long before her employment with this employer." It is from this judgment that Davies appeals.

Discussion
The Worker's Compensation Act, in particular La. R.S. 23:1031.1 (hereinafter the "Statute"), following its amendment by Acts 1189, Regular Session 2001, provides for claims for occupational diseases as follows:

*465 A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

* * * * * *
D. Any occupational disease contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed not to have been contracted in the course of and arising out of such employment, provided, however, than any such occupational diseased contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by a preponderance of the evidence.

* * * * * *
Davies argues that the WCJ improperly dismissed her case by granting JCI's motion under La. C.C.P. art. 1672, because it weighed the evidence presented by Davies using the "overwhelming preponderance" standard of former La. R.S. 23:1031.1(D), prior to the 2001 legislation. The WCJ's reasons cited the former law and found that Davies "failed to sustain this heighten[ed] burden of proof."
The amendment to the Statute, effective June 29, 2001, removed the "overwhelming preponderance" or heightened standard of proof formerly required to overcome the statutory presumption that occupational diseases contracted within twelve months of employment are non-occupational. Accordingly, Subsection D now requires proof by a simple preponderance of the evidence.
A statute changing the burden of proof is procedural and is to be applied retroactively. See Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724. Thus, we find that under the facts of this case, Davies had to overcome the statutory presumption regarding her CTS by a preponderance of the evidence, and the WCJ applied the wrong burden of proof.
Where a trial court's legal error interdicts the fact-finding process, and if the record is otherwise complete, the reviewing court should make an independent, de novo review of the evidence. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502; Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742; Myles v. Moore, 36,452 (La.App. 2 Cir. 8/30/02), 827 So.2d 516.
Also, since the WCJ's ruling came as an involuntary dismissal at the close of the plaintiff's case, we must consider the law regarding our review of such dismissal. La. C.C.P. art. 1672(B) provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed *466 the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
A motion for involuntary dismissal is allowed at the close of plaintiff's evidence in a bench trial. The movant requests dismissal of the action as to him on the ground that, based upon the facts and the law, the plaintiff has failed to show a right to relief. See Silva v. Calk, 30,085 (La.App. 2 Cir. 12/10/97), 708 So.2d 418. Such a motion requires the judge the evaluate the evidence and render a decision based on a preponderance of the evidence, without any special inference in favor of the party opposing the motion. Id.
An appellate court should not reverse an involuntary dismissal based on La. C.C.P. 1672(B) in the absence of manifest error. Wright v. Pratt, 33,471 (La. App. 2 Cir. 8/23/00), 766 So.2d 668; Silva v. Calk, supra. If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Fite v. Louisiana Title Co., 36,393 (La.App. 2 Cir. 9/18/02), 828 So.2d 165; Central-Herrin Storage & Transfer Co., Inc. v. Cordell & Co. Ins. Agency, Inc., 35,868 (La.App. 2 Cir. 4/3/02), 813 So.2d 1222 (citing Rosell v. ESCO, 549 So.2d 840 (La.1989) and Stobart v. State, through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993)); Collins v. City of Shreveport, 35,172 (La.App. 2 Cir. 10/31/01), 799 So.2d 630.
Applying this law to the WCJ's involuntary dismissal in this case, we find that the record of Davies' case is complete and that we may review the facts of her case de novo because of the WCJ's error regarding the burden of proof. Had there been two permissible views of the evidence, with one view overlooked by the WCJ because of the erroneous application of the higher burden of proof, we might consider a remand of this case to the trier-of-fact for a conclusion of the trial. Nevertheless, since we find that Davies failed to overcome the legal presumption of subsection D of the Statute by a preponderance of the evidence in her case in chief, we affirm the ruling of the WCJ for the following reasons.
Sections A and B of the Statute together provide that the employee's contraction of an occupational disease "due to causes and conditions" of employment is "the same as if the said employee received personal injury by accident arising out of and in the course of his employment." The legislature has broadened the concept of "accident" to extend to occupational diseases, and the event of "contraction," like the occurrence of an accident, is the primary causative factor. Subsection D of the Statute provides a statutory presumption pertaining to the causation or "contraction" factor.
The effect of a rebuttable statutory presumption in a civil case is the subject of newly enacted articles in the Code of Evidence. C.E. arts. 301 et seq. Article 302 provides the following definitions pertinent for our review:

*467 * * * * * *
(2) A "predicate fact" is a fact or group of facts which must be established for a party to be entitled to the benefits of a presumption.
(3) A "presumption" is an inference created by legislation that the trier of fact must draw if it finds the existence of the predicate fact unless the trier of fact is persuaded by the evidence of the nonexistence of the fact to be inferred. As used herein, it does not include a particular usage of the term "presumption" where the content, context, or history of the statute indicates an intention merely to authorize but not to require the trier of fact to draw an inference.
(4) An "inference" is a conclusion that an evidentiary fact exists based on the establishment of a predicate fact.
With these definitions, Article 305 provides as follows:
If the trier of fact finds the existence of the predicate fact, and there is no evidence controverting the fact to be inferred, the trier of fact is required to find the existence of the fact to be inferred.
In this case, the predicate fact for the operation of the legal presumption is the onset of symptoms of the occupational disease within the initial twelve months of employment. The predicate fact is therefore undisputed in this case since Davies was only employed for three months. The inference or presumption mandated by the legislature upon the establishment of the predicate fact is that Davies' CTS was not contracted in the course and scope of her employment with JCI, but was contracted before the time of her employment. The evidence necessary to controvert "the fact to be inferred" under C.E. art. 305 would therefore have to focus on Davies' work activities or life experiences before the time of Davies' employment. Such evidence might show that Davies had never previously utilized her hands and wrists in physical activities that could precipitate CTS and that she had never had symptoms of CTS prior to her employment with JCI. We do not find such evidence in the record of plaintiff's case. Therefore C.E. art. 305 applies, and the trier-of-fact must conclude that the contraction of CTS occurred prior to Davies' employment.
At trial, Davies' case consisted of evidence detailing her activities during the short duration of her employment with JCI. This is basically evidence of the "predicate fact" that gives rise to the legislative presumption against her claim. This evidence would, therefore, have little relevance, if any, to controvert the legal presumption of her contraction of the disease prior to November, 1999. Moreover, apart from the statutory inference, the evidence reveals that Davies had in fact contracted CTS as early as 1994. Thus, Davies would have the added burden of demonstrating with medical testimony that CTS may be contracted on multiple occasions and that medical intervention might have remedied her CTS after 1994. The evidence indicates that the surgery recommended to her in 1994 never occurred.
Accordingly, from our review of the record, we do not find that Davies presented evidence controverting the established fact and legal presumption that her CTS was contracted before the time of employment. Since an employer is only responsible for worker's compensation benefits for occupational diseases contracted during the time of employment, the WCJ's judgment in favor of JCI is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.