STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-654

**JOHN GORDON**

**VERSUS**

**CENTURY 21**

**************
APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, DOCKET NO. 15182
HONORABLE ALLEN A. KRAKE, PRESIDING

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Sylvia R. Cooks, John D. Saunders, and Oswald A. Decuir, Judges.

**REVERSED.**

James Slaughter
Attorney at Law
403 Second Street
Colfax, Louisiana 71417
(318) 627-5999
COUNSEL FOR PLAINTIFF/APPELLANT:
    John Gordon

Gregory N.Wampler
Lemoine & Wampler
607 Main Street
Pineville, Louisiana 71360
(318) 473-4220
COUNSEL FOR DEFENDANTS/APPELLEES:
    Century 21 Millennium and Paige Walker

**COOKS, Judge**.

## STATEMENT OF THE CASE

The sole issue on this appeal is whether the Plaintiff, John Gordon, has a viable cause of action against Century 21 and Paige Walker. The trial court found he did not and dismissed his claim at the close of his case.

## STATEMENT OF THE FACTS

John Gordon, is the owner of Lots 51 and 52 in Nantachie Acres subdivision. Mr. Gordon purchased the two lots in 1999 for the sum of $5,700.00. In June 2000, Manual A. Lopez and his wife listed Lots 54 and 55 in Nantachie Acres for sale with Century 21. The Century 21 agent handling the sale of the lots was Jerry Carley, who is now deceased. Mr. Carley inadvertently placed a For Sale sign on Lots 51 and 52, lots owned by Mr. Gordon. On November 16, 2001, Gunmar and Tamala Agersten purchased Lots 54 and 55 in Nantachie Acres from Manual A. Lopez and his wife for the sum of $7,250.00. However, the For Sale sign remained on Mr. Gordon's lots and the Agerstens mistakenly believed they were the owners of Lots 51 and 52. The Agerstens hired an individual to bush hog Mr. Gordon's property and remove a number of trees. In November 2001, the Gordons visited their property and saw several trees had been removed. It was then the error was discovered. The Century 21 For Sale sign with Mr. Carley's name, as agent, was still on the property.

Mr. Gordon filed suit against Century 21 Millennium and Paige Walker, as owner and broker, for negligence in placing the sign on the wrong lot and causing the removal of their trees. The estate of Jerry Carley was originally named as a Defendant, but later dropped from the suit. Ms. Walker answered the Petition for Damages, asserting the following:

> . . . .
> 4. The property listing expired on December 1, 2000 and the sign

2

was removed from Mr. Lopez's property. On August 6, 2001 the property was re-listed for sale at $7,500.00. At this time to the best of our knowledge, was when Mr. Carley went back out to the property and inadvertently placed the sign on Mr. Gordon's lots.

. . . .

6. On November 6, 2001, The Argerstens made an offer on said property for $7,000. Mr. Lopez countered this offer at $7,250 and the Purchasers accepted the counter on November 9, 2001 since they felt the land was more valuable because of the culverts which they saw.

. . . .

8. Due to the neglect of the property owner, the Agerstens had to have someone come out to bush hog and clean up the property in order to make it a presentable homesite. Mr. Gordon himself stated to our office that he had not even been out to view his property since before June 1, 2000.

9. Once the property was cleaned up it was apparent that there was a large dead oak tree still standing which needed to be removed. While removing this tree, the tree man also removed 2 smaller Post Oaks and 1 Wild Plum tree. All of these trees were situated in the perfect location for the homesite.

10. Sometime after the closing our office was contacted by Mr. Gordon who at that time had still not been to view his property. He stated someone who lived in the area had met Mr. Agersten on the said lot and told Mr. Agersten that the property belonged to Mr. Gordon. They had then contacted Mr. Gordon to advise him of what had transpired.

11. Upon viewing the lots, we discovered the property had been greatly enhanced by the work, which had been completed thus far, including bush-hogging, cleaning and removal of dead tree. We viewed the 'stumps' of the three trees (2 Post Oaks and 1 Wild Plum) which were removed from the ideal location for any homesite on the property. We also took pictures of these trees and property.

12. Although an error was made in the wrong property being bush-hogged and cleaned, with one dead tree and three others being removed, we believe the property was not harmed and in fact actually would have increased in value had Mr. Gordon chose to sell it while it was in good condition. Since we are in the real estate profession, we believe we are much more educated as to the value and saleability of a property. We often recommend to land owners that they bush-hog and clean up their lots prior to putting them on the market so as to bring top dollar for their property. Therefore we reject the claim that the property has suffered any damage worth severance. Nor has the property decreased in value. We do agree to go and plant three trees (2 Post Oak and 1 Wild Plum) on said property. Additionally, we would also be happy to bring a dead one along with them if Mr. Gordon believes this

3

will enhance his property as well.

This document was signed by Ms. Walker and filed in the record. Trial on the merits was held on October 8. 2003 before the Honorable Allen A. Krake. At the close of Plaintiff's case, the Defendants moved for a directed verdict, which the trial court granted, stating:

> [T]he problem comes with this, with this is, that may indeed be a right of indemnification from the Eggerstons [sic] to, vis-a-vis, Ms. Walker, but that doesn't create any privity between Mr. Gordon and Ms. Walker, as Ms. Walker's connection to this would be through the Eggerstons themselves. Is . . . if they, if they . . . I'm not going to pass on whether they would have a right of indemnification against Century 21 or not. However, I am going to grant the defendant's motion for a directed verdict in this case, as I don't see, I don't see a cause of action against Ms. Walker, against Ms. Walker by Mr. Gordon.

We find the trial court erred in dismissing Mr. Gordon's claims against Century 21 and Ms. Walker. Accordingly, for the reasons assigned below, we reverse the decision of the trial court and remand for further proceedings.

## LAW AND DISCUSSION

At the close of Mr. Gordon's case, Century 21 and Ms. Walker moved for a directed verdict.[1] The trial court dismissed Mr. Gordon's claim finding no cause of action against Century 21 and Ms. Walker. He found Mr. Gordon could not recover his alleged damages from Century 21 and Ms. Walker because there was no privity between them. The trial court concluded the only possible claim that could be made against Century 21 and Ms. Walker was based on indemnification and that claim could only be asserted by the Agerstens.

Defendants, on appeal, urge this court to affirm the trial court's decision and, alternatively, argue even if Mr. Gordon has a cause of action against Century 21 and

---

[1] A motion for directed verdict is proper in a case tried before a jury. The correct procedural vehicle in a case tried before a judge is a motion for involuntary dismissal under La.Code Civ.P. art. 1672.

Ms. Walker, he has failed to present sufficient evidence at trial to defeat a motion for involuntary dismissal. Specifically, the Defendants contend Mr. Gordon failed to establish the identity of the individual who placed the For Sale sign on the property or the identity of the individual who cut the trees.

*No Cause of Action*

In determining whether a plaintiff has stated a cause of action, we must examine the face of the petition with supporting documentation. The well-pleaded facts in the petition must be accepted as true. La.Code Civ.P. art. 931; *Hawkins v. Evangeline Bank & Trust Co.,* 01-1292 (La.App. 3 Cir.2/06/02), 817 So.2d 141 *writ denied*, 02-658 (La. 5/24/02), 816 So.2d 308; *City of New Orleans v. Bd. of Comm'rs*, 93-690 (La. 7/5/94), 640 So.2d 237. This inquiry is designed to test the legal sufficiency of the petition to determine whether the plaintiff is afforded a remedy in law based on the facts alleged in the petition. *Everything on Wheels Subaru, Inc. v. Subaru South, Inc*., 616 So.2d 1234 (La. 1993); *Hawkins*, 817 So.2d 141.

Mr. Gordon's petition alleges he is the owner of Lots 50 and 51 in Nantachie Acres Subdivision. In September 2001, Mr. and Mrs. Agersten saw a For Sale sign on Lots 50 and 51, lots owned by Mr. Gordon. The sign belonged to Century 21. Jerry Carley was listed as agent. The Agerstens agreed to purchase the lots. After the sale was consummated, the Agerstens began to clear Mr. Gordon's lots. When Mr. Gordon visited his property he found it had been cleared of valuable trees. Mr. Gordon's petition alleges [d]ue to the negligence [of Century 21 and Jerry Carley], they are indebted to Plaintiff for value of trees which were removed and/or cut." We find the trial court erred in concluding Mr. Gordon has no claim against Century 21 and Ms. Walker. It is undisputed Mr. Carley entered Mr. Gordon's property and inadvertently placed the For Sale sign on his property. Mr. Carley's name was listed

5

as agent on the Century 21 sign. It is also undisputed the Agerstens because of Mr. Carley's actions, mistakenly believed they were the owners of Lots 50 and 51. The Agerstens then hired an individual to bush hog and remove a number of trees on the property. As an experienced real estate agent Mr. Carley owes a duty of reasonable care in the listing and selling of real estate. But for the actions of Mr. Carley, Mr. Gordon's lots would not have been damaged. Mr. Gordon's cause of action against Mr. Carley is based on La. Civ.Code art. 2315 which provides, in relevant part:

> Every act whatever of man that causes damage to another obligates him by whose fault it happened to repair it.

If it is shown Mr. Carley is an employee of Century 21 and Ms. Walker and not an independent contractor, the agency would be responsible for his negligence under Louisiana Civil Code Article 2320, which provides in relevant part:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

We reverse the finding of the trial court that Mr. Gordon's petition fails to state a cause of action in negligence against Century 21 and Ms. Walker.

*Involuntary Dismissal*

In a bench trial, at the close of plaintiff's case, the defendant may move for an involuntary dismissal under La.Civ. Code art. 1672, which states in relevant part:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

A motion for involuntary dismissal "requires the judge to evaluate the evidence and render a decision based on a preponderance of the evidence, without any special

6

inference in favor of the party opposing the motion." *Davies v. Johnson Controls, Inc.*, 36,498 p.4 (La.App. 2 Cir. 10/23/02), 830 So.2d 462, 466. Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proved is more probable than not. *Brown v. Bowler*, 94-667 (La.App. 5 Cir. 5/10/95), 659 So.2d 799. Moreover, undisputed evidence in the record "should be taken as true to establish a fact for which it is offered." *Id.* at 802.

On appeal, Century 21 and Ms. Walker urge this court to affirm the dismissal of Mr. Gordon's petition. The Defendants claim Mr. Gordon failed to present any evidence at trial as to the identity of the individual who placed the sign on the Gordon property or the identity of the individual who cut the trees. The Defendants point out the Agerstens were never named as defendants in the suit and were not called to testify. However, it appears there is no dispute as to who mistakenly placed the sign on Mr. Gordon's property and who mistakenly cut the trees. Moreover, these facts were already in evidence prior to trial and the trial court should have taken notice of the record. In answering Mr. Gordon's petition for damages, Ms. Walker admitted Jerry Carley was a broker for Century 21 Millennium at the time of the incident. She further admitted it was Mr. Carley who "inadvertently placed the sign on Mr. Gordon's lots" and admitted "an error was made in the wrong property being bush-hogged and cleaned." Moreover, Ms. Walker identified the Agerstens as the parties who hired an individual to "come out to bush hog and clean up the property in order to make it a presentable homesite." After the property had been bush hogged and trees cut, Ms. Walker stated she went out to view the lots and took pictures of the felled trees. It is Ms. Walker's contention Mr. Gordon's property was actually enhanced by the wrongful removal of his trees. Under La.Civ.Code art. 1853 a "judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full

proof against the party who made it." Statements made by a party in an Answer to a petition fall within the scope of this article. *Norwell Equipment Co., Ltd. Partnership v. Hardy*, 2000-00934 (La.App. 3 Cir. 12/6/00), 773 So.2d 905.

At trial, Mr. Gordon testified he did not sell his two lots to the Agerstens nor did he authorize anyone to cut the trees on his lots. He visited the lots in November 2001 and discovered several trees had been cut. He also observed a Century 21 sign on his property with the name of Jerry Carley as agent. He later learned the Agerstens mistakenly believed the property had been sold to them. Mr. Gordon testified he received a call from an attorney representing Century 21. The attorney offered to "make the property right." Mr. Gordon testified he rejected the offer. When asked whether he knew who had physically cut the trees, he responded that the Agerstens cut the trees. The Plaintiff presented the testimony of Mark Talley, a certified appraiser. Mr. Talley testified he inspected the property and observed several trees had been cut. He also observed remnants and stumps from prior standing trees. The circumference of some of the stumps was very large and there was brush and debris piled up in various areas that had been bush-hogged. Mr. Talley testified:

> In this particular case, I felt that the value was diminished based on the information I received as to what type of trees had been removed, and my understanding was that they were not removed by the owner of the property, but by someone other than the owner, and that the trees that were removed were indicated to me as being black walnut, hickory, and I think some other hardwood trees that were to the client in particular noteworthy, so I believed that it had an impact on the value as to the client.

Based on our review of the record, there is ample evidence establishing Mr. Carley mistakenly placed the For Sale sign on Mr. Gordon's property. The trees were cut without the owner's consent and he suffered damages as a consequence.[2]

---

[2]"Where there is a legal right to recovery, but the damages cannot be assessed exactly, the court has reasonable discretion to assess the value based on all of the facts and circumstances of the case." *Davis v. Culpepper*, 34-736, p. 7 (La.App. 2 Cir. 7/11/01), 794 So.2d 68, 75. The

It appears the only real dispute remaining is whether Mr. Carley is an employee of Century 21 or an independent contractor. Ms. Walker testified Jerry Carley was an independent contractor and not an employee of Century 21. She testified: "You can only have one broker's license in an organization, and then anybody that holds a broker's license would be under an independent contract. I mean, they're just like any other agent. An independent contractor is an agent." However, Ms. Walker further testified Mr. Carley was working as an agent for Century 21 at the time of the incident. He held himself out to the public as an agent for Century 21. He advertised under the Century 21 name. He was prohibited from working for any other agency during the time he was working for Century 21. All real estate commissions due to Mr. Carley went through a Century 21 account. At closing, his commission check was made out to Century 21. Century 21 then issued a check to Mr. Carley for his commission, less any commission owed to the agency for his work.

The issue of whether a real estate agent is an employee of the company or an independent contractor was recently addressed in *Hughes v. Goodreau*, 01-2107 (La.App. 1 Cir. 12/31/02), 836 So.2d 649. The facts in that case are as follows. Catherine and Frank Hughes, purchasers, sued Darrell and Judy Goodreau, sellers, alleging a redhibitory defect in their home. Six months after purchase, their home flooded following a heavy rain. The Goodreau's filed a third party demand against Prudential Properties, the real estate brokerage firm that handled the sale of the home.

---

court in *Davis* stated:
> An owner of timber is entitled to recover damages for the loss of young, unmerchantable trees, as well as the reforestation cost of the cut trees. *Evans v. B.R. Bedsole Timber Contractors, Inc.*, 521 So.2d 837 (La.App. 2d Cir. 1988); *Isdale v. Carman*, 96-1435 (La.App. 3 Cir. 04/02/97), 692 So.2d 687.

*Id.* at 75. *(See also, Olsen v. Johnson*, 99-783 (La.App. 3 Cir. 11/3/99), 746 So.2d 740, where this court affirmed the decision of the trial court awarding damages for the cut timber and aesthetic value of the trees; for removal of debris; for emotional distress; and for expert witness fees.)

Prudential Properties alleged the agents, Broussard and Haber, who sold the home were independent contractors and Prudential Properties could not be responsible for their negligence. The court cited La.Civ.Code art. 2320 and stated the criteria for determining liability on the part of Prudential Properties :

> For an employer to be liable for the actions of an employee under article 2320, the plaintiff must show that (1) a master-servant relationship existed between the tortfeasor and the employer, and (2) the tortious act of the tortfeasor was committed within the scope and during the course of his employment with the employer. *Brumfield v. Gafford*, 99-1712, p.7 (La.App. 1st Cir. 9/22/00), 768 So.2d 223, 227. Therefore, once it is determined that an employment contract exists, for purposes of the employer's vicarious liability in tort, it is necessary to determine what *type* of employment contract exists, i.e., whether the employee is a mere servant or an independent contractor. *See Vining*, 482 So.2d at 693 n. 4. The distinction between a mere servant and an independent contractor is a factual determination decided on a case-by-case basis. *Tower Credit, Inc. v. Carpenter*, 2001-2875, p. 6 (La. 9/4/02), 825 So.2d 1125, 1129.

*Id.* at 657.

The court in *Hughes* noted the contract between the agents and Prudential Properties listed the agents as an independent contractors. However, the court found while this designation may have an impact on the parties to the contract "it is not binding or controlling on the rights of third persons. The rights of third persons are controlled by the substance, rather than the title, of the contractual relationship between the parties." *Id.* at 659. Based on the evidence presented at trial regarding the actual working relationship between the parties, the *Hughes* court found the agents were not independent contractors, but were employees of Prudential Properties, and Prudential Properties was vicariously liable under La.Civ. Code art. 2320 for their negligence.

The trial court erred in granting the involuntary dismissal because all of the evidence presented up to this pont indicates Mr. Gordon established his claim by a preponderance of the evidence.

10

**DECREE**

Based on the foregoing review of the evidence, we reverse the decision of the trial court dismissing Mr. Gordon's claim and remand for a completion of a trial on the merits. Costs to await merits.

**REVERSED AND REMANDED**.