15 So.3d 1282 (2009)
Ralph WILLIAMS, Plaintiff-Appellant,
v.
Kimberly ALLEN, David Legan and State Farm Fire & Casualty Co., et al., Defendants-Appellees.
No. 44,301-CA.
Court of Appeal of Louisiana, Second Circuit.
July 1, 2009.
Rehearing Denied August 13, 2009.
*1284 Steven E. Soileau, Shreveport, for Appellant.
Kimberly Allen, In Proper Person.
Charles G. Tutt, Shreveport, for Appellees, David Legan, Winners Circle of Homes, Inc. dba Century 21 Winners Circle of Homes and State Farm Fire and Casualty Company.
Before WILLIAMS, STEWART and CARAWAY, JJ.
WILLIAMS, J.
The plaintiff, Ralph Williams, appeals a judgment in favor of the defendants, Kimerly Allen, David Legan, Winners Circle of Homes, Inc. and State Farm Fire and Casualty Company ("State Farm"). The trial court granted the defendants' motion for involuntary dismissal, finding that the plaintiff failed to produce sufficient evidence to prove the elements of defamation. For the following reasons, we affirm.

FACTS
In July 2000, Ralph Williams began working as a real estate agent with Winners Circle of Homes, Inc. ("Winners Circle"), which was located in Shreveport. David Legan was a real estate broker and the owner of Winners Circle. In addition to selling real estate, Williams trained other agents and helped develop computer applications for the office. Legan held weekly sales meetings with the Winners Circle agents, who were encouraged, but not required, to attend. During the sales meeting on March 14, 2005, attended by approximately 25 agents, a question was raised about the method of distributing customer leads among agents. Kimerly Allen then asked Legan what he was going to do about Ralph Williams stealing leads and preventing other agents from making money. Allen claimed that Williams was somehow taking leads from the company's website when he was at the office late at night. Legan said he would look into the situation. Williams, who was not present when Allen made the statements, then joined the group and denied Allen's accusations, calling her an idiot. Allen asserted she had proof that Williams was improperly taking leads and responded yes when he asked if she was calling him a thief and a liar. A short time after this episode, Williams told Legan that he could not sell real estate in the same office as Allen. Williams then rented separate office space, but remained affiliated with Winners Circle until June 2005, when he started his own real estate sales company.
In September 2005, the plaintiff, Williams, filed a petition for damages against the defendants, Allen, Legan, Winners Circle and State Farm. The plaintiff *1285 alleged that his reputation and ability to earn income were damaged by Allen's false and defamatory statements at the March 2005 meeting, by Legan's ratification of those statements and by Legan's own defamatory remarks to other agents that he did not trust plaintiff. At trial, after the plaintiff rested, the defendants moved for involuntary dismissal on the grounds that plaintiff had failed to present sufficient evidence to prove the elements of defamation. The trial court granted the defendants' motion, finding no evidence that Legan was liable for defamation and that plaintiff failed to establish that he had suffered damages as a result of Allen's remarks. The court rendered judgment dismissing plaintiff's claims against all of the defendants. The plaintiff appeals that part of the judgment dismissing his defamation claim against Allen and his vicarious liability claim against Legan and Winners Circle.

DISCUSSION
The plaintiff contends the trial court erred in dismissing his claims against Allen. Plaintiff argues that the court could not dismiss Allen from the action because she did not individually move for involuntary dismissal.
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party may move for a dismissal of the action as to him on the grounds that upon the facts and law, the plaintiff has not shown a right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render a judgment until the close of all the evidence. LSA-C.C.P. art. 1672(B). A motion for involuntary dismissal requires the trial court to evaluate the evidence and render a decision based on a preponderance of the evidence, without any special inference in favor of the party opposing the motion. Davies v. Johnson Controls, Inc., 36,498 (La.App.2d Cir.10/23/02), 830 So.2d 462; Gordon v. Century 21, 04-654 (La.App. 3rd Cir.11/17/04), 888 So.2d 385.
In the present case, the plaintiff asserts that the attorney for Legan, Winners Circle and State Farm moved for involuntary dismissal only for his clients. However, this assertion is not supported by the record. After the plaintiff rested, the attorney representing the above-named defendants stated that "on behalf of the defendants I would move for a judgment at the close of the plaintiff's case." Thus, the attorney's motion was not qualified or limited only to his clients as asserted by plaintiff. Nor did Allen, who appeared in proper person, express any wish not to be included in the motion made on behalf of "the defendants." To the contrary, Allen had previously shown an intent to join in the motions of other defendants by filing a motion to adopt all applicable pretrial pleadings filed by her co-defendants. Further, we note that the plaintiff did not raise this procedural objection at the time the court dismissed plaintiff's claims against Allen for failure to show that he had been damaged by her remarks. In any event, even if we assume that the trial court made a procedural error in dismissing the plaintiff's claims against Allen without an express motion by her individually, remand is not necessary because the record is sufficient for our determination of the remaining issue. See Koch v. Koch, 97-1600 (La.App. 4th Cir.4/22/98), 714 So.2d 63.

Defamation
The plaintiff contends the trial court erred in finding there was insufficient evidence to prove that he was damaged as a result of the alleged defamatory remarks. Plaintiff argues that damages were presumed because Allen's accusations were *1286 defamatory per se and, in the alternative, that he produced sufficient evidence of actual damages.
Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129; Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552. Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Costello, supra; Trentecosta, supra. Publication is communication of the defamatory statement to someone other than the party defamed. Melancon v. Hyatt Corp., 589 So.2d 1186 (La.App. 4th Cir.1991). The fault requirement is often set forth in the jurisprudence as malice, actual or implied. Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with malice or other fault, published a false statement with defamatory words that caused plaintiff damages. Cyprien v. Board of Supervisors University of Louisiana System, 08-1067 (La.1/21/09), 5 So.3d 862; Costello, supra. If even one of the required elements of the tort is lacking, the cause of action fails. Costello, supra.
Words which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. Costello, supra. When a plaintiff proves publication of words that are defamatory per se, the elements of falsity, malice and damages are presumed, but may be rebutted by the evidence at trial. Costello, supra.
In the present case, Sandra Park was the only non-party witness who was present at the meeting when the accusations against plaintiff were made. Park testified that during the meeting, Allen "asked David Legan when he was going to do something about Ralph Williams stealing leads" and preventing other agents from making money. Park stated that Legan then said he was looking into the situation. Park testified that Allen asserted that she had proof that plaintiff was using the company website to take customer leads when he was in the office at night. Park stated that Allen repeated her accusation when plaintiff entered the room and he called Allen an idiot. Park testified that Legan did not say anything derogatory about plaintiff at the meeting. She stated that plaintiff appeared very upset by Allen's accusation and that the working environment at Winners Circle was "very hostile" for him after the March 2005 meeting. Park testified that plaintiff was so uncomfortable that he rented office space off of the premises while still working with Winners Circle. Park acknowledged that in June 2005, she left Winners Circle and began working at plaintiff's new realty company despite Allen's accusations. Park testified that she knew of two agents who had declined to work at plaintiff's company because they were concerned about plaintiff's reputation. Park stated that in her knowledge, plaintiff's reputation was not blemished in the real estate industry before March 2005.
In her testimony, Kim Allen denied that she was the first to mention plaintiff's name at the March 2005 meeting. Allen testified that in response to another agent's question about the distribution of customer leads, Legan had said that "Kimerly came to me [and] she thought Ralph Williams was stealing leads." Allen stated that she then told the group that she had previously spoken with Legan because she suspected that "someone" was signing onto the company website after hours. Allen testified that after plaintiff denied the accusation she may have mentioned that she *1287 possessed an email that was proof of the plaintiff's actions. Allen explained that the email was from the company's website designer, who had expressed concern about plaintiff's request for a password to access website files. Allen testified that she had not used the words thief or liar in reference to the plaintiff at the meeting. Allen stated that sometime after the March 2005 meeting, she was shocked when a broker from another company asked her about what had been said at that meeting.
David Legan testified that in 2005 he was the owner of Winners Circle and held weekly sales meetings with the real estate agents working with his company. Legan stated that several days prior to the March 2005 meeting, Allen came to his office and expressed her concern that plaintiff was improperly taking business leads that should have gone to other agents. Legan testified that at the meeting on March 14, 2005, Allen was the first person to raise the question about what would be done to stop agents from improperly taking business leads that should go to others. Although Legan stated that he knew he was not the first person to raise that issue at the meeting, he did not remember who first mentioned plaintiff as the person taking the leads. Legan testified that he also did not recall hearing the term "stealing leads" used at the meeting. Legan stated that he had not noticed any particular animosity between plaintiff and other Winners Circle agents after the meeting, but acknowledged that plaintiff had said he was having difficulty working at the office after the incident. Legan testified that he had not participated in any real estate transactions with plaintiff after he left Winners Circle.
The plaintiff testified that after operating another business for a number of years, he began working as a real estate agent at Winners Circle in 2000. Plaintiff asserted that he was one of the top agents in sales until 2004, when he began helping to develop the company's website and laptop presentations. Plaintiff stated that after arriving late to the March 2005 meeting, he learned that Allen had accused him of stealing customer leads by accessing the computer database and that her comments upset him. Plaintiff explained that if a customer contacted Winners Circle through the online chat function on its website, then some customer information might be recorded on the chat log that an agent could use to contact the person. He stated that the log did not contain any such information when it was checked and that he did not steal any leads. Plaintiff testified that although Legan did not repeat Allen's accusation, he should have stopped her comments. Plaintiff stated that he moved to a separate office shortly after the meeting because other agents were talking about him and it was difficult for him to work there. Plaintiff then became a broker and started his own realty company in June 2005. Plaintiff testified that Allen's false remarks at the March 2005 meeting placed a stigma on his reputation and hurt his ability to recruit agents for his business. He stated that many agents said they could not work with him because of his bad reputation.
In addition, the plaintiff testified that he did not want to start his own company at the time because Winners Circle was a good place to earn money. However, the plaintiff acknowledged that in 2004, the year before the meeting, his tax return showed a business loss of $52,588, while after the meeting in 2005, his records showed a gross income of $75,689 from his realty company. Plaintiff testified that after the March 2005 meeting, he met with Legan to discuss the financial conditions sought by plaintiff to continue working at Winners Circle, but they did not reach an agreement. Despite his testimony that other agents would not work with him *1288 after the meeting, plaintiff could not specify any amount of commissions that he lost because of Allen's remarks. Nor could plaintiff identify any customers who did not trust him as a result of the incident. The plaintiff acknowledged that he had previously been sued a number of times, including lawsuits in 2000 for breach of a purchase and sale contract and in 1999 for improper removal of assets from his prior business.
In his brief, plaintiff argues that damages are presumed because Allen's remarks injured his professional reputation and were defamatory per se. However, even if we assume that Allen published a statement that was defamatory per se, any presumption of damages was rebutted by the evidence produced at trial. Despite the plaintiff's assertion that Allen's accusation caused the conditions that forced him to leave Winners Circle, the testimony indicated that plaintiff ultimately left not because of Allen's remarks, but because Legan did not agree to the future financial arrangements sought by plaintiff. Contrary to plaintiff's contention that Allen's statement damaged his ability to earn income, the record shows that the plaintiff's income actually increased in the period following the March 2005 meeting. In addition, the plaintiff was unable to specify any amount of commissions that he lost because of Allen's remarks. Thus, the record supports the trial court's finding that plaintiff failed to produce sufficient evidence of pecuniary loss resulting from Allen's accusation.
We note that the element of injury resulting from a defamatory statement may include nonpecuniary or general damages, such as injury to reputation, personal humiliation, embarrassment or mental anguish. Regardless of the type of injury asserted, however, the plaintiff must present competent evidence of the injuries suffered. Plaintiff must also demonstrate that the defamatory statements were a substantial factor in causing the harm. Costello, supra; Kosmitis v. Bailey, 28,585 (La.App.2d Cir.12/20/96), 685 So.2d 1177.
In this case, Park testified that a real estate agent, Janet McCord, declined to work for plaintiff's business because of concern over plaintiff's reputation. However, the testimony showed that McCord not only discussed the job with Park, but interviewed with the plaintiff despite Allen's previous accusation. Thus, the record supports a finding that Allen's remarks were not a substantial factor in the agent's choice not to accept the job with plaintiff.
In addition, plaintiff's testimony indicated that factors other than Allen's statement could have affected his professional reputation, such as a number of lawsuits related to his prior deer stand business and litigation alleging that plaintiff failed to perform under a purchase and sale contract. Although plaintiff and his witnesses testified that he was "upset" by Allen's statement, the plaintiff failed to present any testimony or evidence that he suffered humiliation or experienced any mental anguish because of Allen's remarks.
The trial court heard the plaintiff's evidence and weighed the credibility of the witnesses, finding that the plaintiff, Allen and Legan each lacked credibility because of their evasive responses to certain questions. Based upon this record, the trial court could reasonably have found that plaintiff failed to satisfy his burden of producing competent evidence to establish that he was damaged by Allen's statement at the March 2005 meeting of agents. The plaintiff's failure to prove even one of the required elements defeats his action for defamation. Consequently, the trial court did not err in granting the motion for involuntary dismissal of plaintiff's action. The assignment of error lacks merit. In *1289 reaching this conclusion, we pretermit a discussion of plaintiff's remaining assignment of error regarding vicarious liability.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellant, Ralph Williams.
AFFIRMED.

APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, CARAWAY and DREW, JJ.
Rehearing denied.