862 So.2d 1146 (2003)
CREDIT RECOVERIES, INC. Plaintiff-Appellant
v.
Chester L. CROW Defendant-Appellee
No. 37,913-CA.
Court of Appeal of Louisiana, Second Circuit.
December 17, 2003.
*1147 Rogers, Hearne & Carter by Michael B. Rennix, Counsel for Appellant.
Robert U. Goodman, Shreveport, Counsel for Appellee.
Before STEWART, DREW and LOLLEY, JJ.
DREW, J.
Credit Recoveries, Inc. appeals from a judgment dismissing its lawsuit against Chester L. Crow. We reverse and remand.

FACTS
In this suit on a promissory note, the question is whether the trial court erred in dismissing the plaintiff's lawsuit on the basis that the note was inadmissible into evidence. On July 12, 1988, Chester L. Crow executed a promissory note payable "to the order of THE FIRST NATIONAL BANK OF SHREVEPORT or BEARER" in the amount of $21,578.42 at an interest rate of 3% per annum above the prime *1148 rate in effect at The First National Bank of Shreveport until paid. A copy of this note was attached to the petition in this case. It is a standard preprinted promissory note, and the back of the note bears the following undated restrictive indorsement:
PAY TO THE ORDER OF CREDIT RECOVERIES, INC. WITHOUT RECOURSE, REPRESENTATION OR WARRANTY OF ANY KIND.
PREMIER BANK, NATIONAL ASSOCIATION
BY: /s/ Palmer Perque
TITLE: PALMER PERQUE, VICE PRESIDENT
On July 15, 1999, Credit Recoveries filed this lawsuit against Chester L. Crow, alleging that Crow owed $7,222.57 on the note, plus interest, as of the last payment date of November 11, 1994. Crow filed an answer generally denying the allegations of the petition. Thereafter, Credit Recoveries filed a motion for summary judgment, supported by inter alia an affidavit of its president, James William Scott, alleging the amount owed and the date of the last payment.
In response, Crow filed an opposition asserting that Premier Bank, N.A., the successor to The First National Bank of Shreveport, had cancelled the debt on September 8, 1994. In support of his opposition, Crow attached:
 A copy of the note that appears identical in substance to the copy attached to the plaintiff's petition, and he stated in his opposition that this note was indeed a copy of the note evidencing the debt.
 What appears to be a bank statement showing a balance on some account of $8,655.73 as of July 8, 1991.
 An IRS Form 1099 for 1994 executed by Premier Bank, N.A., as creditor in favor of Crow as debtor cancelling on September 8, 1994, a debt of $7,891.00.[1]
 Copies of checks written by Crow and his wife to Premier Bank on September 10, 1994; October 6, 1994; and November 11, 1994, in the amount of $50.00 each.
 An undated and unpersonalized letter from Premier Bank, to "Loan Customer" noting that the customer's recent loan payment was more than what was due and stating that a check accompanying the letter was a refund of the overpayment.
In an accompanying affidavit, Crow admitted that Premier Bank, N.A., was the successor to The First National Bank of Shreveport, that he was unable to make payments on the note after June 27, 1991, and that Premier Bank, N.A., cancelled the debt on September 8, 1994. Crow stated that the $50 checks were payments made by him to Premier after the bank had cancelled the debt and that by its letter Premier refunded these payments to him.
Upon this evidence, the trial court denied summary judgment for Credit Recoveries, and after both plaintiff and defendant secured new counsel, Crow filed an amended answer. In this answer, Crow alleged that at the time Credit Recoveries purchased the note, the obligation represented by the note had been extinguished by the then holder of the note and thus Credit Recoveries had no cause of action. Crow further alleged that the obligation had been extinguished by remission or rescission, and that the actions of Credit Recoveries, "assignee of Bank One," had prejudiced him and that Credit Recoveries *1149 was estopped from asserting its claim against him.
In his witness list, Crow noted that he might call "a representative and employee of Bank One, successor in interest to Premier Bank, as yet unnamed [.]" In the statement of the case in his pre-trial brief, Crow noted that Premier Bank, N.A., was the successor to The First National Bank of Shreveport, and he stated that Credit Recoveries purchased the note on September 30, 1994.
Thereafter, the matter went to trial. Prior to the commencement of testimony, the plaintiff offered the note, filed into the suit record as an attachment to its motion for summary judgment, as plaintiff's Exhibit 1. Crow objected to the introduction of the note into evidence, asserting that since the lawsuit was brought by someone other than the payee, the plaintiff had to prove its ownership of the note. After discussion of the applicable law, the court refused to allow Credit Recoveries to introduce the note into evidence at that time. Thereafter, Credit Recoveries called Mr. Crow to testify.
Crow admitted that he was the person who borrowed $21,578.42 from The First National Bank of Shreveport on July 12, 1988, and admitted that he had made payments on the note to that bank and to other unspecified payees. Crow was not asked and did not admit that the note offered as plaintiff's Exhibit 1 was the note that he signed. Crow admitted that he had received a demand for payment on the note from Credit Recoveries and that he had asserted the remission of the debt. When shown a letter purportedly written by him to Credit Recoveries containing an offer to repay the debt under different terms, Crow said that he had no recollection of the letter, and the court refused to allow this into evidence as well, citing its absence on the exhibit list filed by the plaintiff.[2] Counsel for Credit Recoveries asked for a continuance to allow the owner of the company to testify about the chain of ownership of the note since that issue was a surprise. The court denied this request, and when the plaintiff had nothing further to offer, Crow moved for an involuntary dismissal under La. C.C.P. art. 1672(B). The court granted the motion, noting that it could do nothing else, since no evidence had been admitted to identify the note. The court specifically observed, "Actually, I think the note possibly could have been identified by Mr. Crow, but it is too late for that now."
The court signed a judgment dismissing Credit Recoveries' lawsuit on April 22, 2002, but no proof of mailing of notice of the judgment to the plaintiff or his counsel appears in the record. Credit Recoveries filed a motion for new trial on May 10, 2002, urging that the court should have admitted the note. Credit Recoveries filed a motion to set aside the judgment on June 18, 2002, urging that its counsel had not been given the opportunity to review the judgment before signing as contemplated by Rule 9.5 of the Rules for Louisiana District Courts. On August 12, 2002, the court signed a second judgment identical to the April 22, 2002, judgment dismissing Credit Recoveries' action, and notice of judgment was mailed to the plaintiff on August 14, 2002. On August 21, 2002, Credit Recoveries filed a second motion for new trial, urging that the court should have admitted the note; the court denied the motion in open court on October 14, 2002, and signed a judgment memorializing the denial on December 26, 2002. No notice of mailing of judgment per La. *1150 C.C.P. art. 1914(C) appears in the record. Credit Recoveries filed a motion for appeal on February 21, 2003, and the matter is now before this court for a decision.

DISCUSSION
Given that there is no proof in the record of the mailing of notice of the April 22, 2002, judgment and all remaining pleadings were timely filed, we consider this appeal on the merits despite potential questions of timeliness.
The issue that ultimately led the court to dismiss the plaintiff's action was the admissibility into evidence of the 1988 note executed by Crow to First National Bank of Shreveport. La. C.E. art. 902 provides, in part:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . . . . .
(9) Commercial paper and related documents. Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.
Crow's argument at trial was that this note could not be admitted as self-authenticating because the party seeking payment was not the named payee. For that proposition he cited La. R.S. 10:3-203; Vidrine v. Carmouche, 422 So.2d 1327 (La. App. 3rd Cir.1982); and N.E. England Associates, Inc. v. Davis, 333 So.2d 696 (La.App. 4th Cir.1976). The theory upon which the trial court did not allow the note into evidence is not completely clear from the record but seems to be based on Crow's assertions about the right of Credit Recoveries to enforce the note. The court noted that there had been an "assignment" of the note and its belief that a witness must therefore identify the note before it could be admitted. Crow's argument is more nearly a substantive defense to the lawsuit rather than a challenge that the note is inauthentic or not what it purports to be. The genuineness of the note had never been attacked prior to trial, and indeed the parties seemed to agree prior to trial that the note in question was the one executed by Mr. Crow. Nevertheless, the appeal is taken from the judgment and not from the reasons for judgment.
All relevant evidence is admissible unless otherwise provided by law. La. C.E. art. 402. Generally, the trial court is accorded discretion concerning the admission or exclusion of evidence. A trial court's decision to admit or exclude evidence will not be reversed absent an abuse of discretion. Holloway v. Midland Risk Ins. Co., 36,262 (La.App.2d Cir.10/30/02), 832 So.2d 1004, writ denied, 02-3247 (La.3/28/03), 840 So.2d 571. Likewise, an appellate court should not reverse an involuntary dismissal based on La. C.C.P. art. 1672(B) in the absence of manifest error. Davies v. Johnson Controls, Inc., 36,498 (La.App.2d Cir. 10/23/02), 830 So.2d 462, writ denied, 02-2855 (La.1/31/03), 836 So.2d 70.
Regarding the transfer of negotiable instruments, La. R.S. 10:3-203 provides, in part:
(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in *1151 fraud or illegality affecting the instrument.
(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made.
More specific provisions govern the instrument at issue in this case. La. R.S. 10:3-109 provides:
(a) A promise or order is payable to bearer if it:
(1) states that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment;
(2) does not state a payee; or
(3) states that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.
(b) A promise or order that is not payable to bearer is payable to order if it is payable (i) to the order of an identified person or (ii) to an identified person or order. A promise or order that is payable to order is payable to the identified person.
(c) An instrument payable to bearer may become payable to an identified person if it is specially indorsed pursuant to R.S. 10:3-205(a). An instrument payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to R.S. 10:3-205(b).
Comment 2 to this statute states, in part:
2) ... Under subsection (b), if an instrument is payable to bearer it can't be payable to order. This is different from former Section 3-110(3). An instrument that purports to be payable both to order and bearer states contradictory terms. A transferee of the instrument should be able to rely on the bearer term and acquire rights as a holder without obtaining the indorsement of the identified payee....
Former La. R.S. 10:3-110(3) provided that "[a]n instrument made payable both to order and to bearer is payable to order unless the bearer words are handwritten or typewritten."
Under the rule announced by the comment to La. R.S. 10:3-109 (and even under the former version of the rule), this preprinted note payable to either the named payee or to bearer was, at its inception, bearer paper. Accordingly, the note could be negotiated, not merely transferred, by physical delivery. La. R.S. 10:3-201(b). Whatever person thereafter was in possession of the note became the holder. La. R.S. 10:1-201(20) provides:
(20) "Holder", with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession. "Holder" with respect to a document of title means the person in possession if the goods are deliverable to bearer or to the order of the person in possession.
Regardless of the identity of the holder, the instrument remained bearer paper until some event changed that status.
The note contains an indorsement purportedly made by a vice president of Premier Bank, N.A., to Credit Recoveries, Inc. This is the first and only indorsement on the note. Regarding indorsements, La. R.S. 10:3-205 provides, in part:
(a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies *1152 a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in R.S. 10:3-110 apply to special indorsements.

. . . . . .
(d) "Anomalous indorsement" means an indorsement made by a person who is not the holder of the instrument. An anomalous indorsement does not affect the manner in which the instrument may be negotiated.
The holder of bearer paper may make a special indorsement, and if Premier Bank, N.A., was the holder of the instrument, the indorsement is effective. The defendant was seemingly in agreement that Premier Bank, N.A., was the successor to The First National Bank of Shreveport; he asserted this to be the case in various filings including at least one affidavit. We believe that Crow is thus estopped from arguing that Premier Bank, N.A., was not the successor to the rights of The First National Bank of Shreveport.
Further, assuming arguendo that Premier Bank, N.A., was not the successor to the rights of The First National Bank of Shreveport, and additionally assuming arguendo that it was not the holder of the instrument by virtue of possession, then its indorsement on the instrument was merely an anomalous indorsement without effect. If that is the case, then the instrument remained bearer paper, and any future holder had the right to enforce the instrument.
We find the cases cited by Crow inapposite to this case. Those cases concern the mere transfer by a holder of an instrument payable to his order; in other words, a transfer without indorsement of a specially indorsed instrument. The instrument in this case was bearer paper and was either specially indorsed to Credit Recoveries by a holder, or indorsed anomalously by an unrelated party. Under either theory, the note was of sufficient authenticity to overcome the objections of Crow under La. C.E. art. 902 or any provision of the Louisiana Commercial Laws. The trial court abused its discretion by refusing to allow the note into evidence; the court should have admitted the note into evidence and then allowed Crow to raise his defenses to the note. The note would have been sufficient to defeat Crow's motion for involuntary dismissal. Accordingly, the trial court was clearly wrong in granting Crow's motion for involuntary dismissal.
The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Chester L. Crow.

DECREE
At appellee's costs, the judgment is REVERSED and the matter REMANDED.
NOTES
[1] The copy of the form in the record is difficult to read and the numbers in the hundreds and tens positions are unclear.
[2] Although the court offered to let Credit Recoveries proffer this letter, it does not appear as an exhibit or any other part of the appellate record.