900 So.2d 184 (2005)
METRO AMBULANCE SERVICE, INC. d/b/a American Medical Response, Plaintiff-Appellant
v.
MED LIFE EMERGENCY MEDICAL SERVICES, INC. and Pafford Emergency Medical Services, Inc., Defendants-Appellees.
No. 39,440-CA.
Court of Appeal of Louisiana, Second Circuit.
March 17, 2005.
*186 Deal & Wheeler, by Phillip T. Deal, Hayes, Harkey, Smith & Cascio, by Thomas M. Hayes, III, Monroe, for Appellant, Metro Ambulance Service.
Newell & Newell, by Daniel W. Newell, Homer, for Appellee, Pafford Emergency Medical Services, Inc.
Hudson, Potts & Bernstein, by Brady D. King, II, Monroe, for Appellee, Med Life Emergency Medical Services, Inc.
Before PEATROSS, DREW and LOLLEY, JJ.
LOLLEY, J.
This appeal arises from the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. Metro Ambulance Service, Inc. d/b/a/ American Medical Response ("AMR") appeals from a judgment denying its Petition for Declaratory an Injunctive relief. For the reasons assigned, the judgment is affirmed.

FACTS
The Petition for Declaratory and Injunction Relief and Damages filed by AMR concerns ambulance operations in Ouachita Parish, including the cities of Monroe and West Monroe, and the ordinances regulating emergency and non-emergency ambulance services in their jurisdiction.
The record indicates that the Ouachita Council of Governments ("OCOG") oversees the licensing of both emergency and non-emergency ambulance service providers, drivers, attendants, and vehicles for the cities of Monroe and West Monroe and Ouachita Parish. This agency comprises representatives from these cities and the Ouachita Parish Police Jury. Although all three governmental bodies each enacted very similar ordinances that regulate the ambulance services within their jurisdiction, all have designated the OCOG with the responsibility of enforcing said ordinances. The Parish Ambulance Ordinance, specifically Ouachita Parish Ordinance 2½-19 ("ambulance ordinance"), sets standards for emergency and non-emergency service providers and the vehicles they use as well as licensing requirements and qualifications for providers, vehicles, drivers, and attendants; the duties of emergency providers and the limitations on non-emergency providers and their use of non-emergency vehicles; and the rates that providers may charge. The ambulance ordinance limits governance to providers of services that originate and terminate in Ouachita Parish.
AMR holds an emergency license as well as a non-emergency license in Ouachita Parish. Although Med Life Emergency Medical Services, Inc. ("Med Life") and *187 Pafford Emergency Services, Inc. ("Pafford") (together "appellees") hold only non-emergency licenses in Ouachita Parish, they have been licensed as emergency ambulance providers in other parishes.
In its petition, AMR claimed that it has been the exclusive holder of an emergency ambulance license in Ouachita Parish issued by the OCOG. AMR alleged that ambulance services provided by appellees in Ouachita Parish exceeded their respective non-emergency licenses issued by OCOG. At the trial of the matter, AMR argued that appellees had been issued licenses in Ouachita Parish "to operate transportation vehicles for routine walking or wheel chair patients transports," but were making ambulance transports that were not authorized by their licenses. Particularly, AMR alleged appellees were transporting patients in Ouachita Parish where time was essential to the life or health of the patient or when medical attention was needed during transport. AMR further averred that appellees exceeded their authority to charge no more than $10.00 each way of transport and 50 cents per mile.[1] Although AMR sought damages from Med Life alleging that their business practices infringed upon its exclusive license, the trial court signed an order bifurcating the trial of the injunctive and declaratory claims from the claims for damages. AMR reserved the right to demand damages from Pafford.
AMR sought declaratory and injunctive relief and to prohibit appellees from ambulance transport of patients: which originate and terminate within Ouachita Parish, Louisiana, where time is of the essence; where medical attention is provided during transport; or where appellees certify medical necessity for ambulance transport to Medicaid or Medicare.
As stated, appellees are licensed for emergency transport, but not within Ouachita Parish. Apparently, the conflict between the parties arose when Med Life allegedly began operating ambulances licensed by OCOG as only non-emergency vehicles to transport patients to and from residences, nursing homes, hospitals and doctor's offices. The vehicles used by Med Life were equipped and marked as emergency ambulances and staffed by a driver and a paramedic. AMR maintained that during the instant litigation, Pafford began conducting similar transports. It is AMR's contention that appellees began billing Medicare and Medicaid for those patient transports, on certification of "medical necessity" for transport by ambulance instead of by automobile or van and that these transports were in violation of the ambulance ordinance. AMR argued that the ambulance ordinance prohibits non-emergency service providers from using vehicles licensed as non-emergency from transporting any person where the element of time is essential to the life or health of the person, and where "treatment or medical attention is needed during transport."
The trial of the matter was held on four different dates, concluding on March 31, 2004. The trial court noted orally that although several complaints were lodged against appellees, the evidence showed that following OCOG's investigation, they were not found in violation of their non-emergency license in Ouachita Parish.[2] *188 The trial court denied AMR's Petition for Injunctive and Declaratory Relief finding that the ambulance ordinance was vague and unclear in defining certain relevant terms like "emergency," "emergency call," and "medical attention" and accordingly, AMR had failed in its burden of proof. This appeal by AMR ensued.

STANDARD OF REVIEW
The standard of review for the issuance of a permanent injunction is the manifest error standard. Parish of Jefferson v. Lafreniere Park Foundation, 98-146 (La.App. 5th Cir.07/28/98), 716 So.2d 472, 478, writ denied, 1998-2598 (La.1998), 723 So.2d 965; Pogo Producing Co. v. United Gas Pipe Line Co., 511 So.2d 809, 812 (La.App. 4th Cir.07/22/87), writ denied, 514 So.2d 1164 (La.1987). The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence, but a preliminary injunction may be issued on merely a prima facie showing by the plaintiff that he is entitled to relief. Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 2003-2220 (La.2004), 875 So.2d 22.
A court of appeal may not set aside a judge's factual finding unless that finding was manifestly erroneous or clearly wrong. Stobart v. State, through Dep't Of Transp. & Dev., 617 So.2d 880 (La.1993). "Absent manifest error or unless it is clearly wrong, the jury or trial court's findings of fact may not be disturbed on appeal." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990). If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 1112. Furthermore, when reviewing questions of law, appellate courts are to determine if the trial court's ruling was legally correct or not. Cleland v. City of Lake Charles, 2002-805 (La.App. 3rd Cir.03/05/03), 840 So.2d 686, writ denied, XXXX-XXXX, XXXX-XXXX (La.2003), 853 So.2d 644.
The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss or damage to the applicant. La. C.C.P. art. 3601. During the pendency of an action for an injunction, the court may issue a temporary restraining order, a preliminary injunction or both. Arco Oil & Gas Co. v. DeShazer, 98-1487(La.01/20/99), 728 So.2d 841. The purpose of a preliminary injunction is to preserve status quo until trial on merits; on the other hand, a permanent injunction can be issued only after full trial on merits in which burden of proof is by preponderance of evidence. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, XXXX-XXXX (La.03/18/04), 867 So.2d 651.

ASSIGNMENTS OF ERROR
Appellant lists several assignments of error which issues may be consolidated as follows:
1. Does the ambulance ordinance prohibit the practice by appellees, non-emergency licensees under the ambulance ordinance, from transporting patients who qualify for ambulance transport under Medicare and/or Medicaid guidelines due to medical necessity?
2. Did AMR establish that appellees were engaged in the practice of transporting patients in need of medical attention via emergency ambulances *189 in violation of the Ambulance Ordinances?
3. Should the trial court have permitted AMR to introduce proffer exhibits 2 and 3 after it had rested and before defendants started their case?

DISCUSSION
As previously stated, this action was filed by AMR to enjoin Med Life and Pafford from allegedly violating the Ambulance Ordinance by transporting persons where time is of the essence or where medical attention is provided during transport. Regulation by local governing authorities of ambulance services, emergency medical services, and aspects attendant to ambulance operation is statutorily mandated to come under the jurisdiction of municipalities and other local governing authorities pursuant to La. R.S. 33:4791.1.
In its first assignment of error, AMR contends the trial court erred by failing to recognize that certification to Medicare and/or Medicaid of medical necessity for ambulance transport of a patient is proof that treatment or medical attention was provided to the patient during transport in violation of the ordinance.
In essence, AMR suggests that appellees violated the ambulance ordinance when they sought reimbursement from Medicare or Medicaid following certification for medical necessity for ambulance patient transports. AMR takes the position that the transports proved that the circumstances were such that either time was critical to the person's health or where medical treatment was required during transport. AMR is also seeking a declaratory judgment that the licenses issued to appellees prohibit them from charging in excess of the maximum rate set by OCOG, which it claimed was $10.00 each way and 50 cents per mile or the applicable Medicare rate.
A review of the evidence indicates that in order to secure reimbursement from Medicare or Medicaid for patient transportation, the medical necessity of the transport must be certified. This certification must be done by an attending physician or medical health care person. As indicated in the record, the form used in these types of patient transportation was approved and used by OCOG for many years prior to the instant litigation. A review of the testimony and evidence does not lend itself to clearly define what entails "medical assistance" or "medical necessity" in circumstances where time is not of the essence. The evidence seems to support a finding that OCOG anticipated that non-emergency ambulance providers would be making ambulance transports in circumstances that were "medically necessary" as when the patient is unable to ambulate without assistance, but where time is not of the essence. The evidence does not support a finding that certification of medical necessity to Medicare or Medicaid alone is proof that appellees violated their non-emergency license. As the testimony and evidence showed, there was some ambiguity in the ambulance ordinance as to what constituted medical necessity. Thus, we can not state that the trial court committed manifest error in concluding that evidence that a health care provider certified certain patient transports as a "medical necessity" to Medicare or Medicaid and that Medicare or Medicaid reimbursed appellees for those patient transports proves appellees violated their license agreement. We thus find no merit to appellant's first assignment of error.
In appellant's next assignment of error, it contends the trial court erred in failing to find that Med Life and Pafford were transporting patients who both needed *190 and were provided medical attention and treatment, in violation of the non-emergency license they held from OCOG. The evidence shows that OCOG deferred to the healthcare providers to make a determination as to whether time was of the essence or whether the patient was in need of medical attention or medical treatment and what that would entail. The evidence is clear that the ambulance ordinance, as well as the testimony at trial did not lend itself to clear definitions as to what entails medical attention or medical treatment or medical necessity. Due to this ambiguity, we can not assert that the trial court erred in its determination that AMR did not meet its burden of proof. We find no error in this regard.
Appellant argues next that the trial court erred by refusing to enjoin appellees from transporting patients in vehicles that are equipped as, but not licensed as emergency ambulances, under circumstances where transport by ambulance was certified to Medicare/Medicaid as "medically necessary." This was not alleged in AMR's original petition; nevertheless we find this contention without merit. It is noteworthy that the ambulance ordinance fails to define the maximum equipment that the ambulances are permitted to carry whether for non-emergency or emergency purposes. What the pertinent ordinance does state is that, "No person licensed under the provisions of this chapter as an ambulance service provider shall allow any non-emergency medical vehicle to be operated without the following minimum equipment...."
David Creed, director of the North Delta Planning and Economic Development District, Inc. ("North Delta"), testified at the trial of the matter. Creed testified that North Delta had previously contracted with OCOG to be the administrator of that organization and provide staffing since OCOG has no staff of its own. North Delta has carried out this role since at least 1980.
Creed testified that the ambulance ordinance established a minimum equipment standard for non-emergency vehicles. In light of this testimony, the fact that appellees' ambulances were equipped with a paramedic, in addition to the standard minimum equipment is not alone an indicator that appellees transported patients in violation of their non-emergency licensed. As indicated by Creed's testimony, had it been determined that Med Life or Pafford were in violation of their license, it would "be grounds for either suspension or revocation of the non-emergency service provider's license by the OCOG." As the evidence does not show that appellees were found to be in violation by OCOG, we find no merit to this assignment of error.
Finally, appellant contends that the trial court abused its discretion in rejecting AMR's proffers 2 and 3. AMR rested its case on January 8, 2004, and court was adjourned. On March 31, 2004, court reconvened and at that time AMR advised the trial court it wanted to re-call one of two witnesses ostensibly to identify and discuss a recent directive from the OCOG Ambulance Committee and a revised Non-Emergency Transportation Authorization. This request was denied by the trial court and AMR made a proffer of the evidence.
The trial court is generally accorded discretion regarding the admission or exclusion of evidence, and its decision to do so will not be reversed absent a showing of abuse of discretion. Credit Recoveries, Inc. v. Crow, 37,913 (La.App. 2nd Cir.12/17/03), 862 So.2d 1146. It is significant that the record does not indicate that appellant laid the proper foundation authenticating proffers 2 and 3, nor did it present evidence that these documents *191 were actually ever adopted by OCOG. The evidence proffered by appellant concerned Medicaid billing guidelines. Since the billing guidelines do not address the issue of certification, we find the trial court was well within its discretion to find that this evidence was not relevant to the issue of whether or not Med Life and Palford were in violation of their non-emergency licenses and whether AMR is entitled to injunctive or declaratory relief. This assignment of error lacks merit.

CONCLUSION
A review of the record in its entirety supports the trial court's ruling that declaratory and injunctive relief was not warranted in this instant. AMR failed to show by a preponderance of the evidence that it suffered irreparable harm in this instant. The ambulance ordinance is replete with ambiguities as to what constitutes medical necessity or medical attention. However, it does purport to indicate that in circumstances where time is of the essence to transport a patient, AMR presently is the only licensed emergency ambulance service provider in Ouachita Parish. The evidence also indicates that as the regulatory agency OCOG has the authority to sanction appellees if it finds they are in violation of their license as non-emergency ambulance providers in the Parish of Ouachita. For the reasons assigned, the judgment of the trial court denying AMR's Petition for Declaratory and Injunctive relief is affirmed. Costs of these proceedings are assessed to AMR.
AFFIRMED.
NOTES
[1] The record reveals that the ordinance had been amended in 2002 to reflect an increase of said charge to $25.00 each way and $1.00 per mile or the applicable Medicare rate.
[2] One complaint against Med Life concerned a situation where time was of the essence and involved an accident in between Ouachita Parish and another parish where Med Life retained an emergency provider license. As Med Life was called to the scene first, it ultimately was not found to be in violation of its non-emergency provider license.