GASKINS, J.
| ,The plaintiffs, William A. Good, Virginia Good, and Charles Douglas Johnston, obtained a permanent injunction against the defendants, Gene Laird, Jim Laird, and Tilford Watts.[1] The injunction prohibits the defendants from hunting or grazing cattle on approximately 170 acres of land in Tensas Parish. The defendants have appealed the trial court ruling. We affirm in part and reverse in part the trial court judgment.
FACTS
The tract in question was owned by John M. Monsell. It contained approximately 170.82 acres. After his death, by judgment of possession, Charles Frederick Monsell (C.F. Monsell) inherited an undivided one-half interest in the property. Harriet Ann Monsell and Caroline Monsell each inherited an undivided one-fourth interest in the acreage. In August 1999, Harriet Monsell sold her undivided one-fourth interest to Jowayne Herring and his wife.
On February 7, 2001, C.F. Monsell gave the plaintiffs permission to hunt on the property. On February 8, 2001, C.F. Monsell granted a five-year lease to Gene Laird on 160 acres “commonly known as the Monsell Estate.” Douglas Johnston was a witness to the lease which was recorded in the Tensas Parish conveyance records on February 9, 2001.
On February 26, 2001, Jowayne Herring and his wife sold their undivided interest in the property to the plaintiffs. In a partition dated July 20, 2001, C.F. Monsell, Caroline Monsell, and the plaintiffs agreed to give the plaintiffs title to a specific tract containing approximately 42 acres. [ ?The partition was finally signed by all the par *811 ties on October 4, 2001, and was recorded in the parish conveyance records.
According to testimony at the hearing on this matter, in November 2001, the plaintiffs sold their 42-acre tract to Delta Diamond, Inc., a corporation controlled by the plaintiffs. C.F. Monsell and Caroline Monsell continued to be owners in indivi-sión of the remainder of the property.
On September 7, 2001, C.F. Monsell leased 160 acres known as the “Monsell Estate” to Gene and Jim Laird for nine years beginning on February 6, 2002, and ending February 5, 2011. This lease was intended to supplement and expand the lease of February 2001. The new lease contained the option to renew for an additional five years, beginning February 6, 2011, and ending February 5, 2016. The lease included hunting rights and was recorded in the parish conveyance records on September 19, 2001.
In June 2002, C.F. Monsell and Caroline Monsell sold a 3.764-acre tract to the plaintiffs. This sale was recorded February 23, 2004.[2]
In July 2004, the plaintiffs and C.F. Monsell executed an agreement to purchase Mr. Monsell’s undivided interest in the property. The printed provision that asserted the property was not subject to a lease was scratched out and initialed by all parties.
In August 2004, Caroline Monsell and C.F. Monsell identified the specific 42.6092 acres belonging to Caroline Monsell and the 81.7508 acres |sbelonging to C.F. Mon-sell. However, this document does not clearly purport to be a partition. The agreement was filed and recorded on August 24, 2004.
In August 2004, C.F. Monsell sold his undivided one-half interest in the property to the plaintiffs. The plaintiffs then owned an undivided interest in the original tract with Caroline Monsell and the plaintiffs’ corporation owned a specific 42 acres of the original tract.
On October 4, 2004, the plaintiffs brought suit to obtain a preliminary injunction against the defendants seeking to prohibit them from hunting or grazing cattle on the property. In their petition, the plaintiffs claimed that the leases were invalid because all the co-owners had not agreed to the leases. The plaintiffs alleged that Tilford Watts had obtained hunting rights on the property from the Lairds.
A hearing on the matter was held on November 15, 2004. The plaintiffs testified that they own an undivided interest in approximately 124 acres of the remaining portion of the Monsell estate and also own, through a corporation, approximately 42 acres that was originally a part of the Monsell estate. They testified that they never agreed to any lease allowing the defendants to hunt or graze cattle on the property. Due to their lack of consent, they contend that the leases by C.F. Mon-sell, purporting to lease 160 acres of the “Monsell Estate” to the defendants, are null. Mr. Johnston testified that he witnessed the original lease for grazing cattle, but that he did not consent to it.
RTilford Watts testified that he has hunted on the property for many years. John Monsell originally gave his permission for Mr. Watts to hunt on the land, followed by C.F. Monsell, Jowayne Herring, and Gene and Jim Laird. Mr. Watts stated that he understood that he had permission to hunt on the approximately 120 acres owned by C.F. Monsell and Caroline Monsell after the partition in July *812 2001, but not on the 42-acre tract owned by the plaintiffs.
Jim Laird testified that the defendants never hunted or grazed cattle on the southern 42 acres of the property. At the close of the hearing, the trial court granted a preliminary injunction in favor of the plaintiffs.
In October 2005, the trial court granted judgment for the plaintiffs, permanently enjoining the defendants, Gene Laird, Jim Laird, and Tilford Watts, from entering, hunting, or grazing cattle on the disputed property. In reasons for judgment, the court noted that at the time the lease of February 7, 2001 was executed, C.F. Mon-sell owned an undivided one-half interest in the property; the Herrings and Caroline Monsell each owned an undivided one-fourth interest.
The plaintiffs acquired the Herrings’ undivided one-quarter interest in the property and the remaining interest in the property was owned one-half by C.F. Monsell and one-fourth by Caroline Monsell. The court noted that both leases described the property as approximately 160 acres commonly known as the “Monsell Estate.” This statement seemed to indicate that the lease was for the entire property. The court found that C.F. Monsell executed the leases without the consent of his co-owners and without | ^specifically noting that the lease applied only to his undivided interest in the property.
The court held that the leases were null under La. C.C. art. 805, because they both purported to lease the entirety of the property without the consent of all the owners. That statute provides:
A co-owner may freely lease, alienate, or encumber his share of the thing held in indivisión. The consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivisión.
The court noted that, although under La. C.C. art. 805, C.F. Monsell could have leased his undivided interest in the property, that is not what is reflected on the document. The document purports to lease the entire tract. The court found both the leases to be null and void. Because the leases were null, the court found that Johnston’s notice of the lease by serving as a witness or any notice afforded by the public records doctrine was without effect.
The court further found that Tilford Watts and his family members had hunted on the property for years with the tacit consent of the Monsell family. Because Watts had no legal right to hunt on the property, the court granted the injunction prohibiting him and his family from hunting on the property. The defendants appealed.
LEGAL PRINCIPLES
An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant. La. C.C.P. art. 3601. The standard of review for the issuance of a permanent injunction is the manifest error standard. The issuance of a permanent injunction takes place only 1 fiafter a trial on the merits in which the burden of proof is a preponderance of the evidence. Metro Ambulance Service, Inc. v. Med Life Emergency Medical Services, Inc., 39,440 (La.App. 2d Cir.3/17/05), 900 So.2d 184.
Relative nullity of contracts is set forth in La. C.C. art. 2031:
A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
*813 Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.
Under La. C.C.P. art. 927, the peremptory exception of no right of action, or interest in the plaintiff to institute the suit, may be noticed by the appellate court of its own motion.
A court of appeal may not set aside a judge’s factual finding unless that finding was manifestly erroneous or clearly wrong. Furthermore, when reviewing questions of law, appellate courts are to determine if the trial court’s ruling was legally correct. Metro Ambulance Service, Inc. v. Med Life Emergency Medical Services, Inc., supra.
DISCUSSION
The defendants concede that Tilford Watts had no legal authority to hunt on the property. They do not oppose that portion of the permanent injunction prohibiting him from doing so. Therefore, we affirm that portion of the trial court judgment permanently enjoining Tilford Watts from hunting on the disputed property.
The defendants contend that the trial court erred in finding that the leases to Gene and Jim Laird were null and void under the terms of La. C.C. |7art. 805, and because all the co-owners did not consent to the leases. They also argue that the trial court erred in failing to find that C.F. Monsell leased his undivided one-half interest in the property.
The plaintiffs maintained, and the trial court found, that the lease purported to cover the entire acreage. At the time of the first lease, C.F. Monsell, Caroline Monsell, and the Herrings were the owners in indivisión of the property. At the time the second lease was executed in September 2001, the Herrings had sold their interest to the plaintiffs. A partition was in progress, but was not finally signed by all the parties until October 2001. The plaintiffs argued that because all the owners of the property did not consent, the leases are null. Moreover, the defendants concede that the lease does not cover the 42 acres owned by Delta Diamond, Inc.
The law is clear that the use and management of property held in indivisión must be determined by agreement of all the co-owners. La. C.C. art. 801. Further, La. C.C. art. 805 provides that the consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivisión. However, the law does not require that the consent of co-owners be written in order to lease property. Acts by a sole co-owner, if useful to all, are ratified as a de facto agency. Schroth v. Seminole Supermarket, Inc., 2002-318 (La.App. 5th Cir.9/30/02), 829 So.2d 597.
A co-owner who does not consent to a lease may attack the validity of the lease as being a relative nullity. This action to nullify a lease by the co-owner for lack of consent is a personal right, which may only be invoked by |sthose persons for whose interest the ground for nullity was established.[3] La. C.C. art. 2031.
If a purchaser buys an interest in property subject to a lease recorded in the public records, the purchaser’s interest is burdened by the lease. La. R.S. 9:2721(A). This purchaser has no right to contest the lease based on the lack of consent of his predecessor-in-title.
*814 In Rowan v. Town of Arnaudville, 2002-0882 (La.App. 3d Cir.12/11/02), 832 So.2d 1185, the plaintiff purchased property belonging to his mother that was burdened by a lease. The plaintiff claimed the lease was null because his mother did not consent to the lease. The court explained that the rights and obligations which automatically transfer to the purchaser are real rights. The actions challenging the validity of a contract or seeking to ratify or nullify a contract, even in the case of real estate transactions, are personal actions. The real rights and obligations transfer from the seller to the buyer without special provision. Personal rights, the court distinguished, do not transfer in the absence of a special assignment of rights to the buyer. The court determined that the ability to challenge the validity of his mother’s consent to lease her land was a personal action belonging to her. The court reasoned that the personal action did not automatically pass to the plaintiff when he purchased the property, and she had not conveyed that right to him. The court found that the plaintiff had no right of action to assert his mother’s lack of consent to the lease.
lflThe peremptory exception of. no right of action determines whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. La. C.C.P. art. 927; Alston v. Stamps, 38,628 (La.App. 2d Cir.6/23/04), 877 So.2d 259. This exception may be raised by this court on its own motion.
The plaintiffs purchased the Herrings’ interest after the first lease had been executed and recorded. They had no right of action to contest the validity of the first lease based on the lack of consent of their predecessor-in-title, without an assignment of this right.[4] The second lease was executed after the plaintiffs had purchased the Herrings’ interest, and the plaintiffs would have had a right to assert their lack of consent to the lease and attack it as being relatively null. However, this interest was partitioned and the plaintiffs received an undivided ownership of 42 acres. Moreover, the 42 acres were conveyed to Delta Diamond, Inc., and the corporation is not a party to this suit. The plaintiffs have no right of action to nullify the second lease based on an interest they previously owned, but which was transferred prior to the filing of this suit. In any event, the defendants acknowledge that the lease does not burden these 42 acres.
The plaintiffs purchased Mr. Mon-sell’s interest in the estate after the second lease was executed and filed in the public record; consequently, the plaintiffs purchased it burdened with the lease. Obviously, the plaintiffs’ predecessor-in-title, Mr. Monsell, consented to the lease. So even if Mr. |inMonsell subrogated to the plaintiffs any of his personal rights of action, the plaintiffs would still have no right of action because Mr. Monsell did not have that right. Nor could Mr. Monsell have sought to nullify the lease based on the other co-owners’ lack of consent, as that action would be personal to them. We find that the lease is still viable as to the interest purchased from Mr. Monsell.
The only other interest involved in this litigation is that belonging to Caroline Monsell. Throughout the various transactions, she has continued to hold her share of the property. She was not a party to *815 this suit and did not testify at trial. While she may have an action to contest the lease(s), if not prescribed, the plaintiffs have no right of action to bring it on her behalf.
As to the 42 acres that were partitioned, the plaintiffs have no right to bring an action in nullity when they have no ownership interest in the property. By all accounts, the defendants agree that the 42 acres is not covered by the lease. As to the interest conveyed by Mr. Monsell, he consented to the lease and he has no right to contest the lease as it affects his interest. In this action asserting relative nullity of the lease, the plaintiffs could not be subrogated to any greater right than Mr. Monsell had. Additionally, Mr. Monsell could not have contested the lease based on the lack of consent of the co-owners, as that would be a personal right of the co-owners. The plaintiffs, likewise, have no right to bring an action of relative nullity on behalf of the co-owners. In summation, the lease is still valid and the injunction must be lifted.
^CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment permanently enjoining Tilford Watts from hunting on the disputed portion of the property in this case. We reverse that portion of the judgment finding the two leases to be invalid and enjoining Gene Laird and Jim Laird from entering, hunting, or grazing cattle on the property. Costs in this court are assessed to the plaintiffs.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. Tilford Watts was incorrectly designated as "Tim Watts” in the trial court pleadings.

. It is unclear whether this property now belongs to Delta Diamond, Inc.

. We find that the facts presented in this case allege a relative nullity of the lease rather than absolute nullity as defined in La. C.C. art. 2030.

. The deed from the Herrings to Johnston and the Goods did contain some subrogation language. We need not determine if this language was sufficient to subrogate the plaintiffs' right to contest the lease because plaintiffs conveyed the land to the corporation prior to the lawsuit.