989 So.2d 233 (2008)
CREDIT RECOVERIES, INC., Plaintiff-Appellant,
v.
Chester L. CROW, Defendant-Appellee.
No. 43,314-CA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
Walter D. White, APLC by Walter D. White, Shreveport, for Appellant.
Robert U. Goodman, A Professional Law Corporation by Robert U. Goodman, Shreveport, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
DREW, J.
Plaintiff Credit Recoveries, Inc. ("CRI") appeals an adverse ruling which dismissed its claim against the widow of the original defendant, Chester L. Crow. Finding no error, we affirm at the cost of plaintiff.

FACTS
This case is fact-intensive, necessitating a firm grip of the basic chronology of events:
 On July 12, 1988, First National Bank ("FNB") made this loan to Crow, secured by a second mortgage on rental property. The note came due in 90 days, but Crow was unable to discharge the obligation in full.
 In early September 1994, Premier Bank (successor to FNB) issued an IRS Form 1099-C ("Cancellation of Debt") to Crow, with these notations: *234 "date canceled: 090894; Amount of debt canceled: $7,991.00."[1]
 The bank's issuance of the 1099-C resulted in negative tax impact to Crow; the write-off presumably resulted in positive tax impact to Premier Bank.
 On September 30, 1994, Premier Bank sold this note and three dozen others (with an aggregate face value of about $600,000.00) to CRI for $1,500.00, with the indorsement reflecting: "without recourse, representation or warranty of any kind."
 On January 6, 1995, CRI sent its original demand letter to Crow.
 On February 14, 1995, after a referenced telephone conversation, Crow wrote CRI that "[t]hey returned a refund check for the last payment."
 On June 15, 1999, after four years of no contact, CRI sent another demand letter to Crow, who responded, advising CRI of the issuance of the 1099-C. (This is allegedly the first time that CRI had learned about the 1099-C).
 On July 15, 1999, CRI filed this lawsuit.
 On May 19, 2003, Crow died; his widow was later substituted as party defendant.
At issue is whether the bank tacitly remitted the debt in 1994, as per La. C.C. art. 1888. The trial court answered this question in the affirmative, and we agree. Two particular factors preponderate toward an affirmance here:
 the bank returned three 1994 payments to Crow, with a cover letter that termed the disbursements as "overpayments," and
 the bank issued a Form 1099 to Crow, the form being titled "Cancellation of Indebtedness."
This dispute has been up on appeal once previously, on other issues. See Credit Recoveries v. Crow, 37,913 (La.App.2d Cir.12/17/03), 862 So.2d 1146.

ANALYSIS
The burden for us to reverse the learned trial court would be that the ruling was clearly wrong or manifestly erroneous, and it is neither.
La. C.C. art. 1888 contains the following controlling language:
A remission of debt by an obligee extinguishes the obligation. That remission may be express or tacit.
The bank and its successor, CRI, cannot have it both ways. Real world consequences follow actions such as:
 returning proffered note payments as "overpayments," and
 issuing an IRS Form 1099-C with adverse tax impact for the recipient.
Under the facts of this case, the debt is no more. It has been tacitly remitted.[2] In other words, before Premier sold this note to CRI, the obligation was already extinguished.
The trial court is also correct that the alleged indebtedness was only approximated by plaintiff, and not proven on an annual basis with any specificity. We do not need to visit this area, since we agree with the primary reasoning cogently stated by the court in its oral reasons for judgment.

CONCLUSION
The trial court's conclusions are eminently reasonable and amply supported by this record. We affirm in all respects.

*235 DECREE
At the cost of Credit Recoveries, Inc., the judgment below is AFFIRMED.
NOTES
[1] Notice the past tense.
[2] In this dispute, it is puzzling why neither side elicited testimony from the bank.